THE PEOPLE ex rel. PETER NECHAMOUS, Appellant, *v.* THE WARDEN OF THE CITY PRISON, Respondent.

The natural and constitutional right of a person to liberty and property is not absolute, but must yield whenever the concession is demanded by the welfare, health or prosperity of the state, and while the legislature is not authorized to enact measures which, under the mere guise of a protection to the citizen, restrain him in the free pursuit of a lawful occupation, legislation that is calculated, intended, convenient or appropriate to protect the public health, and serve the public comfort and safety, is within the legislative jurisdiction and discretion, and the exercise of this discretion is not the subject of judicial review.

The courts will assume that the legislature, by the passage of an act affecting the citizen, intended to promote the public interests, and where the act admits of two constructions, one of which makes it appli-

cable in furtherance of those interests, that construction will be given to it which thus sustains it.

The constitutionality of a statute is not to be determined or affected by the manner in which its provisions are carried out by those upon whom is devolved that duty.

The act of 1892 (Chap. 602, Laws of 1892), providing for the examination and registration of " employing or master plumbers " within the localities named, and making it a misdemeanor for any person to engage in that " trade, business or calling " without such registration, is constitutional. (Peckham, O'Brien and Bartlett, JJ., dissenting.)

Accordingly, *held* (Peckham, O'Brien and Bartlett, JJ., dissenting), that an indictment and conviction for a violation of the provisions of the act was proper.

(Argued January 14, 1895; decided January 29, 1895.)

Appeal from order of the General Term of the Supreme Court in the first judicial department, made November 16, 1894, which affirmed an order of Special Term dismissing a writ of habeas corpus, and remanded the relator to the city prison.

The relator was arrested and convicted for doing business as a master plumber in the city of New York, in violation of the provision of chapter 602 of the Laws of 1892. A writ of habeas corpus was sued out by him and he was brought before the Special Term of the Supreme Court, where, after a hearing, the writ was dismissed and the prisoner remanded to the custody of the defendant. On appeal to the General Term, the order of the Special Term dismissing the writ was affirmed and the relator has now appealed to this court.

*Roger Foster* for appellant. The act is void as a deprivation of the relator's liberty and property without due process of law by forbidding him to exercise his lawful calling ; as a denial to him of the equal protection of the laws of the state of New York, and as a discrimination against him on account of his race. (N. Y. Const. art. 1, § 6; *People* v. *Gillson,* 109 N. Y. 401 ; *People* v. *Marx,* 99 id. 377 ; *Ramsey* v. *People,* 142 Ill. 380 ; *State* v. *Loomis,* 115 Mo. 307 ; *Comm.* v. *Perry,* 155 Mass. 117 ; *Comm.* v. *P. M. Co.,* 155 id. 122 ; *People* v. *Budd,* 117 N. Y. 1.) The fact that this act purports to be

1895.]   People ex rel. Nechamous v. Warden, etc.   531

N. Y. Rep.]               Statement of case.

designed to protect the public health will not prevent the court from invalidating it upon the ground that this is a pretense to cover the design of creating a monopoly. (*People* v. *Ewer*, 141 N. Y. 129; *Singer* v. *State*, 72 Md. 464.) The legislature has no power to compel a man to submit to an examination to obtain a certificate of competency before continuing the exercise of his handicraft as a plumber. (*Jacobs' Case*, 98 N. Y. 98.) In determining the constitutionality of the act the court may examine its effect as proved by the uncontradicted affidavit of the relator. (*Yick Wo* v. *Hopkins*, 118 U. S. 356, 368.) The act is further void as an infringement of the State Constitution by granting an exclusive privilege, immunity and franchise to the examining board of plumbers. (N. Y. Const. art. 3, § 18.) The act is also void as an infringement of the State Constitution, being a private or local bill which embraces more than one subject, and which does not express its subject in its title. (N. Y. Const. art. 3, § 16; *In re Paul*, 94 N. Y. 497.) The act was not intended to apply to those like the relator, who were engaged in business as plumbers before its passage. (*People* v. *Rosenberg*, 138 N. Y. 410, 416.)

*John R. Fellows* and *John D. Lindsay* for respondent. The legislature may pass laws, the effect of which is to impair or even destroy the right of property. Private interest must yield to public advantage. All property is held subject to the power of the state to regulate or control its use to secure the general safety and the public welfare. (*Phelps* v. *Racey*, 60 N. Y. 14; *Bertholf* v. *O'Reilly*, 74 id. 521; *Wynehamer* v. *People*, 13 id. 391.) The object of the statute under consideration is obvious, and its measures are clearly calculated, intended, convenient and appropriate to accomplish that object. Therefore, the discretion of the legislature in its enactment is not the subject of judicial review. (*People* v. *Gillson*, 109 N. Y. 389; *In re Jacobs*, 98 id. 98; *People* v. *Marx*, 99 id. 377.) That there is a fair, just and reasonable connection between the statute and the purpose it was designed

to serve is apparent upon a perusal of the enactment, and such relation being manifest, the enactment must be upheld as a valid exercise of the police power. (*People v. Ewen*, 141 N. Y. 129; *People v. King*, 110 id. 418; *People v. Budd*, 117 id. 1.) A statute of Maryland requiring all plumbers, whether masters or journeymen, to take out a license, has been declared constitutional. (*Singer v. State*, 72 Md. 464.) Courts do not sit in review of the discretion of the legislature, or determine upon the expediency, wisdom or propriety of legislative action in matters within the powers of the legislature. Every intendment is in favor of the validity of statutes, and no motive, purpose or intent can be imputed to the legislature in the enactment of a law other than such as are apparent upon the face and to be gathered from the terms of the law itself. (*People v. Bolton*, 55 N. Y. 54; *Soon Hing v. Crowley*, 113 U. S. 703, 710.) The remedy for unjust or unwise legislation, not obnoxious to constitutional objection, is to be found in a change by the people of their representatives according to the methods provided by the Constitution. (*Bertholf v. O'Reilly*, 74 N. Y. 516; *People v. Budd*, 117 id. 1, 29.) The statute is not a local act. (*Ferguson v. Ross*, 126 N. Y. 459; *In re N. E. R. R. Co.*, 70 id. 328; *In re Church*, 95 id. 2.)

Gray, J. The act, for the violation of the provisions of which the relator was arrested and convicted (Chapter 602 of the Laws of 1892), created a board for the examination of plumbers; which, in the cities of New York, Brooklyn and Albany, was to be known as the " examining board of plumbers," and in other cities of the state as " the examining and supervising board of plumbers and plumbing." The members of the board were to be appointed by the mayor and were to consist of five persons; two of whom were to be master plumbers, of not less than ten years' experience in the business of plumbing, and one was to be a journeyman plumber of like experience. The two other members of the board were to be the chief inspector of plumbing and drainage of the

board of health and the chief engineer having charge of the
sewers.    The fourth section of the act empowered the several
boards of examiners to examine all persons intending to
engage in the business of plumbing, "as employing plumb-
ers;" with the power to examine all persons applying for cer-
tificates of competency as "employing or master plumbers,"
or inspectors of plumbing; to determine their fitness and
qualifications for conducting such business, and to issue certifi-
cates of competency to all such persons as, upon a satisfactory
examination, were determined by the board to be qualified for
conducting the business, "as employing or master plumbers,"
or inspectors of plumbing.    The fifth section requires any per-
son intending to conduct "the trade, business or calling of a
plumber, or of plumbing  *   *   *   as employing or master
plumber," to submit to examination before the board as to his
experience and qualifications in such trade, business or calling,
and declares that, after September first, 1893, it shall not be
lawful in any city of this state for any person to conduct such
"trade, business or calling," unless he shall have first obtained
a certificate of competency from the board of the city.    The
sixth section provides that on and before September first,
1893, every "employing or master plumber," carrying on his
"trade, business or calling" in any city of this state, shall
register his name and address at the office of the board of
health of the city, and that he shall thereupon be entitled to
receive a certificate of such registration; provided that, at the
time of his application for registration, he hold a certificate of·
competency from the examining board.    A further provision
of the section makes it unlawful for any person to engage in
the "trade, business or calling" of an "employing or master
plumber" without such registration.    The thirteenth section
provides that any person violating any of the provisions of the
act, or any regulation of the board of health, or of the board
of examiners, shall be deemed guilty of a misdemeanor, etc.

The relator was a master plumber, who had practiced his
trade for some years past in the city of New York.    He does
not allege that he had applied for examination, or had been

refused a certificate of competency from the examining board of plumbers of the city of New York; but he alleged in his petition his trade, his religion and Russian nationality, and then set forth various refusals of the board in that city to grant certificates to other persons, because discriminating against race and religion and because of their not belonging to an association of master plumbers. He says that the act is void, as a deprivation of his liberty and property, without due process of law; inasmuch as it grants to the individual members of the examining board of plumbers an exclusive privilege, immunity and franchise. He says that it is a denial to him of the equal protection of the laws of this state and that it is a discrimination against him on account of his race. In specification of his objections he says, first, that the object of the act is to create a monopoly; because, if intended to secure good plumbing work, it would apply to journeyman plumbers and independent plumbers who work alone, or with the aid of apprentices, and do not employ other plumbers; and, second, that even if the act applied to all plumbers, journeyman as well as master, it would still be unconstitutional.

As a preliminary observation, I may say that the first ground partakes more of criticism upon the extent to which the legislature has gone. Every person may follow the trade of a plumber, if he chooses, and the restriction is upon their employing men to work for them in their business, unless they hold a certificate of competency based on experience and qualifications. Another observation is that the act does not suggest, as the appellant says of it, any "discrimination against him on account of his race." That is pure supposition; based upon the way he claims to have seen the board perform its duties, and not upon the language of the act, or any possible inference therefrom. A final observation is that it is not made to appear by the petition for the writ that the relator has suffered anything at the hands of the board of examiners. In the absence of any allegations that he applied for examination; that he passed the examination satisfactorily and that the board unjustly, or otherwise, refused him the cer-

tificate, we must assume, under his allegations of his competency and skill as a plumber, or master plumber, that he could have successfully applied for the certificate, which the board was authorized to grant.

It seems to me that the constitutionality of this act is to be tested by its effect upon the citizen's right to pursue a lawful employment. If it imposes an arbitrary restriction and if it has no reference to the welfare and health of the people, it must be condemned. I am not unwilling to concede that the act skirts pretty closely that border line, beyond which legislation ceases to be within the powers conferred by the people of the state, through the Constitution, upon its legislative body. When the legislature passes an act, which plainly transcends the limits of the police power of the state, it is the duty of the judiciary to pronounce its invalidity and to nullify the legislative attempt to invade the citizen's rights. The court should never hesitate to interpose the barrier of its judgment against the operation of laws, which distinctly contravene constitutional rights. There has been much discussion upon the subject of what is a valid exercise of the police power of the state through legislative enactment and there is little to be added to what this and other courts have said. The police power extends to the protection of persons and of property within the state. In order to secure that protection, they may be subjected to restraints and burdens by legislative acts. If the act is a valid and reasonable exercise of the police power of the state, then it must be submitted to, as a measure designed for the protection of the public and to secure it against some danger, real or anticipated, from a state of things, which modifications in our social or commercial life have brought about. The natural right to life, liberty and the pursuit of happiness is not an absolute right. It must yield, whenever the concession is demanded by the welfare, health, or prosperity of the state. The individual must sacrifice his particular interest or desires, if the sacrifice is a necessary one in order that organized society as a whole shall be benefited. That is a fundamental condition of the state and which, in the end,

accomplishes by reaction a general good, from which the individual must also benefit. The restraint of personal action is justified, when it manifestly tends to the protection of the health and comfort of the community, and no constitutional guaranty is then violated. (*People* v. *Ewer*, 141 N. Y. 129.) The legislature, however, is not authorized to enact measures which, under the mere guise of a protection to the citizen, restrains him in the free pursuit of a lawful occupation and such legislation this court has had occasion, within recent years, to condemn. (*In re Jacobs*, 98 N. Y. 98; *People* v. *Marx*, 99 id. 377; *People* v. *Gillson*, 109 id. 389.) In the *Gillson* case it was observed by Judge Peckham that if legislation is calculated, intended, convenient or appropriate to accomplish the good of protecting the public health and of serving the public comfort and safety, the exercise of the legislative discretion is not the subject of judicial review; but those measures must have some relation to those ends. To this unassailable proposition I will add the remark, that the courts should always assume that the legislature intended by its enactment to promote those ends and if the act admits of two constructions, that should be given to it which sustains it and makes it applicable in furtherance of the public interests. What is, then, the construction which this act should receive from the court? In the first place, the intendment is warranted that the drainage and sewerage, whether of public works and buildings, or of private tenements, shall be as skillfully planned and carried out, as the modern standard of the science admits. Whatever the individual doubts as to the benefits or success, in a sanitary sense, of the work of plumbing as now practiced, it is generally recognized to be essential to comfort and health; and that it should be the subject of some supervision by the authorities ought not to be put in question. The very doubt should make us hesitate to place any obstacle in the way which the legislature, in its discretion, adopts, in order to accomplish something by which large communities shall benefit in their health and comfort. Is this statute not a regulation of a trade, which is

in the public interest? The trade very closely concerns the inhabitants of cities and it should require no argument to show that the more skillful and the more competent the plumber, who is employed to do some large work upon the drainage and sewerage system of a city, or of a public or private building, the greater the security to those inhabitants.

This act does not restrain individuals from working as plumbers. It restrains persons from engaging in the business of master or employing plumbers; unless, from experience and qualifications, they are shown to be, themselves, of competent skill. We know that important plumbing work calls for plans and designs and requires skilled supervision. It is some guaranty of these requirements being met, that the plumber, employed upon the particular work and who must employ plumbers and assistants in carrying out the work engaged upon, is competently certified and, therefore, held out to be skilled and capable in his business. The layman in his ignorance is obliged to put some trust in the plumber he engages; for the plumber's work is not only one calling for the exercise of skill, but it is done in places which are dark, or more or less inaccessible. The legislature in creating a system by which the qualifications of plumbers, who propose to have work performed by others under their direction, as it seems to me, aids the citizen, in an important degree, in placing his confidence and furnishes some safeguard against the performance of bad and unsafe work. That the men employed by the master plumber may prove untrustworthy in practice, or may neglect the work committed to them, certainly can furnish no ground for attacking the purpose of this statute; for the presumption and the natural probability are the other way, that a master plumber, who has been certified by the board, will exercise care in the selection of his employés and that he will be competent to see and correct their faults and omissions. Every reason, in my opinion, which bears upon the citizen's comfort and health, demands that we sustain this statute as a step in the right direction.

Nor is the act vicious for affecting the general individual;

or as operating as some restraint upon other business occupations, in connection with which the work of plumbing may be undertaken; as, for instance, in the case of a contract for the erection of a building, which may include the doing of the plumbing work. As I have previously observed, it does not operate to prevent the individual from following the trade of a plumber. It, merely and only, requires of those who propose to do business as master plumbers, to submit to an examination as to their general competency. The application of the statute is to persons following the trade of a practical plumber. The terms " trade, business or calling," employed in the statute are synonymous and have relation to the mechanical employment. One's trade is that business which he has learned and fitted himself to follow and when the legislature speaks of a " person intending to conduct the trade, business or calling of a plumber," it has used the words, as they would naturally and ordinarily be understood by all, and, particularly, by that class of the people to whom they were intended to apply.

So regarded, there can be no reasonable doubt that the application of the statutory provision is to the person, whose actual and real occupation is that of the practical plumber. It cannot have a more extended application, nor comprehend those persons whose business is not that of the plumber, as it is understood to be. Kindred occupations would not be affected. Whenever a person holds himself out to the public as a plumber, undertaking to do work as such, he must, if he employs assistants to perform the work, comply with the law and procure his certificate.

Nor is it a ground of objection that, as the statute was intended to apply only to master or employing plumbers, the inference follows that a monopoly in the business is created or sanctioned. It may, or may not, have been wiser that the legislature should require examinations by, and certificates from, the examining boards in the case of every person engaged in the business of plumbing; but if the act is a step in the direction of something which will enure to the public

health and comfort, that it does not go as far as it might, is not a reason for invalidating it. I am able to see how this act may limit the number of master plumbers, and with great wisdom; but I am not able to see how any monopoly will necessarily follow. The purpose of the act is in the direction of limiting the business to those persons who will perform the work, presumably, with some regard to the public health and comfort and it would be a misuse of language to speak of such provisions as creating, or even tending to create, a monopoly. As well might it be said that to compel physicians, or druggists, to take out licenses, is a provision giving a monopoly of the particular business to those who become licensed. If the measure is not so obvious a precaution in the case of plumbers, as in that of physicians, or of druggists, is that a reason for condemning it, if it may reasonably be considered as some precaution? I think not and I think the measure, as one relating to the general health of cities, is evident and intended to be so from the provisions of the act; which require the board of examiners to contain the chief examiner of the city sewers and the chief inspector of plumbing of the board of health; which require not only registration with the board of health, but that the business shall be conducted under rules and regulations prescribed by that board, and which authorize that body to cancel registrations, for violations of rules and regulations for the plumbing and drainage of the city.

Nor is the constitutionality of an act to be determined by the manner in which its provisions may be carried out by those upon whom devolves the duty of acting as examiners. If they act unfairly or oppressively, as alleged by the relator in his petition, that is conduct which may call for a remedy against the persons who compose the board; but it does not furnish ground for assailing the validity of the statute. As the act was framed it provided for an impartial board, made up of persons to whom, in human intendment, such duties as were imposed could safely be entrusted for performance.

I deem it unnecessary to refer to the other objections to

540 Peºple ex rel. Nechamous v. Warden, etc.   [Jan.,

Dissenting opinion, per Peckham, J.        [Vol. 144.

this act. They were sufficiently answered at the General Term. It is my opinion that it would be unfortunate for the public interests, if this statute should be condemned. It is a step in a direction which should be encouraged; for it does distinctly relate to the public health and welfare.

The order appealed from should be affirmed.

Peckham, J. (dissenting). I dissent from the judgment of the majority of the court in this case. It is unnecessary to enlarge upon the subject, but I desire to record my grounds of dissent as clearly as I can.

The act does not state that it is passed in order to preserve the public health. It is sought to be upheld on that ground and as an exercise of that branch of the police power of the state which pertains to the public health. It seems plain to me that the statute has no legitimate tendency to preserve, protect or defend the public health. Any plumber, however ignorant of his trade he may be, can, under this act, be employed to do any kind of plumbing work, and without having his work subjected to any kind of supervision or inspection. He is absolutely free and so is his work. The statute only prohibits him from employing others to work for him, from being, in other words, a master plumber. In order to become a master plumber he must obtain this certificate. The chance to obtain it lies through an examination into his capacity and his knowledge of his trade, to be certified to by the board of examiners, of which a proportion of master plumbers is to form a part. Thus his right to work in his trade is circumscribed and limited by force of this statute, and he is compelled to pay a certain amount before he is permitted to pass the examination.

It is said this is proper and right in order that the public may have some assurance that the master or employing plumber is not alone capable of following his trade as such, but that he has sufficient knowledge of the laws of health as applicable to plumbing to enable him scientifically to follow that trade as a master plumber. It is to be observed that the

examination does not necessarily call for any such knowledge. The act can be complied with, so far as this examination is concerned, if the applicant has but the most ordinary knowledge of the laws of his trade and the proper way to follow it practically. It is true the board may demand much more than that, and much more than was ever necessary to practically pursue the trade. If such additional knowledge were exacted it would be in fact adding to the known and ordinary qualifications necessary to carry on the well-recognized trade of a plumber, those other and entirely different and much superior qualifications necessary in one who intended to conduct the professional business of a sanitary expert with regard to systems and general plans of plumbing. The legislature has no power to impose such a condition upon one desiring to exercise such a trade. It has, as I believe, no power to prescribe that an individual who desires to follow the trade of a plumber shall be possessed of qualifications which do not naturally pertain to such a calling, and which are only possessed by persons qualified for the pursuit of a very different occupation, involving learning and skill of an uncommon order. The legislature might probably provide for a sanitary inspection of plumbing work and thus secure a kind of work, as to its system and sufficiency, which might fairly be said to tend towards the protection of the health of the general public. But the trade of the practical plumber is not one of the learned professions, nor does such a tradesman hold himself out in any manner as an expert in the science of " sanitation," nor is any such knowledge expected of him, and this act, when practically enforced, may or may not exact it of him. This board has the very greatest and an entirely arbitrary discretion as to what qualifications it will exact from the applicant. It may make an examination which none but an expert in sanitary knowledge could pass, or it may make the examination entirely perfunctory. Judging from the other features of the act, it will depend upon considerations which are foreign to any question of health as to what kind of examination will be made.

If the broader and more severe examination is held, or the greater qualification is insisted on, the imposition of such a condition in the case of a workman upon his natural right to work at his ordinary trade renders the act under which such a condition can be imposed unconstitutional. Whether in all cases the condition would be insisted on is immaterial. It is the power to insist upon it under the law which makes the law itself void.

And yet, if the more severe examination is not made, and the superior qualification exacted, the act is absolutely worthless as a health measure. If it is intended as an act simply to secure the ordinary capacity necessary for the prosecution of the trade of a plumber, it is useless and vexatious, and not a health regulation in any form. If it exact more, it is an improper addition to the qualifications of a simple tradesman. This act permits the greater exaction to be made.

It seems to me very absurd to treat this statute as one which in any possible manner affects, or which was really intended to affect, the public health. And when it is seen that the work of the master plumber may be performed by journeymen who have been subjected to no official examination, and whose work need not be examined by any one, not even by the master plumber himself, the radical failure of the act to really protect the public health is quite apparent. Sewer gas is dangerous, but exactly how to treat the matter of plumbing in order to run the least danger therefrom, is a subject for professional learning and skill, except as to the narrow part of the tradesman-plumber, which is to see to it that his pipes do not leak, and that they do not permit the escape of gas. This part is mechanical and easily understood, and is the part which the tradesman performs, and the system, the proper arrangement thereof, and such kindred questions, are for the determination of a more scientific and a more learned body of men.

The examination provided for by this act, if conducted for the sole purpose of discovering the qualifications of an applicant in regard to those matters which pertain and are germane

to the real and practical trade of a plumber, will not have the slightest tendency to discover whether he has also the requisite knowledge to enable him to act as a sanitary expert.

Taking the act as a whole, it would seem quite apparent that its purpose is to enable the employing plumbers to create a sort of guild or body among themselves, into which none is to be permitted to enter excepting as he may pass an examination, the requisites of which are not stated, and where his success or failure is to be determined by a board of which some of their own number are members. In order to be at liberty to exercise his trade as a master plumber he must pass this examination and become a member of this favored body. It is difficult for me to see the least resemblance to a health regulation in all this.

I think the act is vicious in its purpose and that it tends directly to the creation and fostering of a monopoly.

It seems to me most unfortunate that this court should, by a strained construction of the act as a health law, give its sanction to this kind of pernicious legislation. We shut our eyes to the evident purpose of the statute, and by means of maxims well enough in their way, but sadly out of place here, impute a purpose to the legislature which it plainly did not have, and which, if it did have, it has failed to carry out, even conceding that the purpose could be legitimately effected by other means. This measure detracts from the liberty of the citizen acting as a tradesman in his efforts to support himself and his family by the honest practice of a useful trade, and I think no court ought to sanction such legislation unless it tends much more plainly than does this act towards the preservation of the health and comfort of the public.

I think the orders of the courts below were wrong and should be reversed and the prisoner discharged.

ANDREWS, Ch. J., FINCH and HAIGHT, JJ., concur with GRAY, J., for affirmance.

O'BRIEN and BARTLETT, JJ., concur with PECKHAM, J., for reversal.

Order affirmed.