(14 Misc. Rep. 334.)

BELL v. GAYNOR et al.

(Common Pleas of New York City and County, General Term. November 4, 1895.)

CONSTITUTIONAL LAW—POLICE POWER—DAIRY REGULATIONS.
    Laws 1887, c. 401, § 4, as amended by laws 1890, forbidding any one to use, sell, dispose of, or traffic in any milk or cream cans belonging to any dealer or shipper of milk or cream, having the initials or name of the owner, etc., on the cans, "without the consent of the agent" of the owner or shipper, does not deprive the owner of his property without due process of law, because it requires the interposition of a middleman for sale by dairymen of their products. Per Giegerich, J. Bischoff, J., contra.

Appeal from Third district court.

Action by Sidney Bell against Patrick A. Gaynor and another to recover certain penalties for the use, possession, etc., without the consent of the owner's agent, of milk cans bearing the name or initials of the owner, pursuant to the provisions of section 1 of chapter 401 of the Laws of 1887, entitled "An act in relation to milk cans," and of section 4 of the same act, as amended by chapter 25 of the Laws of 1890. There was a judgment for defendants, and plaintiff appeals. Reargument ordered for failure of the judges to agree.

Argued before BISCHOFF and GIEGERICH, JJ.

William J. Fanning, for appellants.
Marston & Eilan, for respondent.

BISCHOFF, J. After careful scrutiny and mature consideration of the legislative enactment urged in support of the recovery in these proceedings (Chapter 401, Laws 1887, as amended by chapter 25, Laws 1890), I am persuaded that it offends against the constitutional guaranty of protection to every person in the enjoyment of his liberty and property until deprived thereof by "due process of law." Const. U. S. Amend. art. 14, § 1; Const. N. Y. 1846, 1894, art. 1, § 6; Bertholf v. O'Reilly, 74 N. Y. 509, 519; 6 Am. & Eng. Enc. Law, 43. Cans are necessary and usual implements in the shipment of dairy products, such as milk and cream, and the attachment to such cans of the names and initials of the owners or shippers is a necessary and usual method of indicating the particular dairy or locality from which the contents of the cans is the product. The use of such cans, marked with the names or initials of the owners or shippers, in the pursuit of lawful business, is, in and of itself, harmless. To inhibit their use and possession by persons other than the owners or shippers, except with the consent of an intermediary, as criminal, is to deprive the cans themselves of one of their attributes of property (their sale and transfer), and to deprive the owners or shippers of one of their undoubted property rights (to sell and transfer the use and possession of their own cans). The same inhibition operates also to restrain both the owners or shippers, as well as the person or persons for whose ultimate use or possession the cans are intended, in the enjoyment of their liberty to dispose of and acquire property, and to pursue a lawful trade or calling. The logical sequence of the validity of the statute in question, if held valid, would be, therefore, legislative absolutism, so far as such incident is involved. With equal force might it be contended that the legislature can make of virtue a vice to be punished, of vice a virtue to be rewarded. Civil liberty, as an institution under our federal and state constitutions, implies more than mere freedom from physical restraint. It comprehends the right of every person living under our government to acquire and dispose of property by lawful means and for lawful purposes, and to pursue any lawful business, trade, or calling, in such manner as to him shall seem meet, provided only that he does not thereby offend against any superior social right, or the equal rights of other persons. "Liberty, in its broad sense, as understood in this country, means the right, not only of freedom from actual servitude, imprisonment, or restraint, but the right of one to use his faculties in all lawful ways to live and work where he will, to earn his livelihood in any lawful calling, and to pursue any lawful trade or avocation. All laws, therefore, which impair or trammel these rights, which limit one in his choice of a trade or profession, or confine him to work or live in a specified locality, or exclude him from his own house, or restrain his otherwise lawful movements (except as such laws may be passed in the exercise by the legislature of the police power, which will be noticed later), are infringements upon his fundamental rights of liberty, which are under constitutional protection." In re Jacobs, 98 N. Y. 98, 106. "A person living under our constitution has the right to adopt and follow such lawful industrial pursuit, not injurious to the community, as he may see

fit. The term 'liberty,' as used in the constitution, is not dwarfed into mere freedom from physical restraint of the person of the citizen, as by incarceration, but is deemed to embrace the right of man to be free in the enjoyment of the faculties with which he has been endowed by his Creator, subject only to such restraints as are necessary for the common welfare." People v. Gillson, 109 N. Y. 389, 398, 17 N. E. 343. "It is one of the absolute rights of the individual to be free from unreasonable restraints upon the sale or transfer of his personal property. The right to sell or transfer one's property is as much an inalienable right as that of enjoyment of property free from unnecessary restrictions. Of course, the right to sell may be subjected to whatever regulations may be needed to prevent any threatened injury to the public or to third persons. In the discussion of the police regulation of trades and employments, the regulation and prohibition of the sale of personal property, as a trade or occupation, have been discussed at length; and, inasmuch as all such regulations are designed to control the sale of merchandise, as a trade, they are considered and criticised in the character of restraints upon the liberty of exercising a lawful calling, rather than as an invasion of the rights of property. In the main, the same objections apply to a police regulation, whether it is considered to be an infringement of personal liberty or of the rights of property." Tied. Lim. § 136, p. 489.

Section 1 of the act under review declares it to be "unlawful for any person or persons, without the consent of the agent of the owner or owners or shipper or shippers, to use or sell, dispose of, buy or traffic in any milk or cream can or cans, belonging to any dealer or dealers, shipper or shippers of milk or cream residing in the state of New York or elsewhere, who may ship milk or cream to any city, town or place within this state, having the name or initials of the owner or owners or such dealer or dealers, or shipper or shippers stamped, marked or fastened on such can or cans or to wilfully mar, erase or change by remarking or otherwise said name or initials of any such owner or owners or dealer or dealers, or shipper or shippers, marked or fastened upon said can or cans." Section 4, as amended by chapter 25, Laws 1890, imposes a penalty of $50 for each can, upon any person who shall offend against the provisions of the act; that is to say, who shall use, sell, dispose of, buy, traffic in, or have possession of any can or cans, without the consent of the agent of the owner or owners, shipper or shippers, or who shall efface the names or initials of the owner or owners, dealer or dealers, shipper or shippers, attached to any such can or cans, without the like consent. Thus, the consent of the owners or shippers, as the case may be, is rendered wholly immaterial, and intended to afford no protection to the possessor of the can or cans, or the person or persons having effaced the names or initials of the owners, dealers, or shippers of such can or cans. By rendering the possession of the cans, or the effacement of the names or initials therefrom, without the consent of the agent of the owners, dealers, or shippers, criminal, and punishable as such, the owners, dealers, or shippers are prevented from parting with the use and possession of their own property and restricted in

their liberty of pursuing a lawful trade or business, in the sale and shipment of milk or cream, while the person or persons for whose ultimate use or possession the owners, dealers, or shippers may intend such can or cans are similarly restricted in the acquisition of property and the prosecution of their calling, without the necessary employment of a middleman. The transaction of an otherwise lawful business is thus, in effect, prohibited between the owners, dealers, or shippers of the dairy products mentioned, and their patrons, except indirectly, through an agent to be employed for such purpose. The act fails of support upon the hypothesis that it is an exercise of the police power vested in the legislature, no apparent public interest being thereby subserved. People v. Warden, etc., 144 N. Y. 529, 39 N. E. 686; Health Department v. Rector, etc., of Trinity Church, 145 N. Y. 32, 39 N. E. 833; Tied. Lim. § 1; 18 Am. & Eng. Enc. Law, p. 739. "Any law which goes beyond that principle, which undertakes to abolish rights the exercise of which does not involve an infringement of the rights of others, or to limit the exercise of rights beyond what is necessary to provide for the public welfare and the general security, cannot be included in the police power of the government. It is a governmental usurpation, and violates the principles of abstract justice, as they have been developed under our republican institutions." Tied. Lim. § 1, p. 4. Any contention that the legislature sought, in disabling the owners or shippers of milk or cream from parting with their cans bearing their names or initials, and necessarily used in the pursuit of their business, to prevent the practice of fraud or deception upon the public, is sufficiently refuted by the fact that the act does not inhibit the transfer of the use or possession of such cans, but subordinates the owners, dealers, or shippers, in the matter of such transfer, to the will of a third person, the agent, for the latter's private and personal advantage. To my mind it is apparent from the act that its design was to subserve only the interests of a class of middlemen between the owners, dealers, and shippers of dairy products, and their patrons, and to such legislation the remarks of Judge Peckham in People v. Gillson, supra, are apposite:

"It is quite clear that some or all of these fundamental and valuable rights are invaded, weakened, limited, or destroyed by the legislation under consideration. It is evidently of that kind which has been so frequent of late,—a kind which is meant to protect some class in the community against the fair, free, and full competition of some other class; the members of the former class thinking it impossible to hold their own against such competition, and therefore flying to the legislature to secure some enactment which shall operate favorably to them or unfavorably to their competitors in the commercial, agricultural, manufacturing, or producing fields."

In Association v. Stanley (Sup.) 20 N. Y. Supp. 19, the court had under consideration only the power of the legislature to change a rule of evidence by making certain relevant facts prima facie evidence of the main fact, with reference to section 2 of the act under review, which declares that the "using, selling, disposing of, buying, trafficking in," or having possession of any such milk or cream cans, "without the consent of the agent of the owner, dealer or

dealers, or shipper or shippers," shall be "presumptive evidence of the unlawful use, sale, purchase or traffic in such can or cans." Nothing in the case alluded to, therefore, conflicts with my views herein expressed. The judgment should be reversed, and since the plaintiff is not entitled to recover, in any aspect, no new trial should be ordered; costs of this appeal and of the court below to be awarded to the appellants.

GIEGERICH, J. I am constrained to dissent from the conclu-sion reached by my associate, that the statute (chapter 401, Laws 1887, as amended by chapter 25, Laws 1890) "offends against the constitutional guaranty of protection to every person in the enjoy-ment of his liberty and property until deprived thereof by 'due pro-cess of law.'" The presumption is always in favor of the constitu-tionality of a statute, and only in case of a clear conflict with the fundamental law will an act of the legislature be adjudged invalid. Roosevelt v. Godard, 52 Barb. 533; People v. Durston, 119 N. Y. 569, 24 N. E. 6; Seweet v. City of Syracuse, 129 N. Y. 316, 27 N. E. 1081, and 29 N. E. 289; People v. Rice, 135 N. Y. 473, 31 N. E. 921. The general term of the supreme court in the Second department, all the judges concurring, have declared the statute now in ques-tion to be a valid enactment (Association v. Stanley, 65 Hun, 163, 166, 20 N. Y. Supp. 19, 20), and I see no reason for disregarding so authoritative an adjudication. For these reasons, to my mind, the judgment appealed from should be affirmed, with costs.

Failing an agreement upon the question presented by this ap-peal, a reargument at the present general term is directed. Code Civ. Proc. § 281.