PEOPLE v. O'CONNELL.

(Supreme Court, Appellate Division, First Department.   January 24, 1896.)

LICENSE—MASTER PLUMBERS.
     One who, as chief engineer of an hotel, is authorized to hire plumbers to assist him in performing work which he is unable to do by himself, is not "an employing or master plumber," whom Laws 1892, c. 602, § 5, as amended by Laws 1893, c. 66, requires to submit to an examination by the examining board of plumbers.

Appeal from court of general sessions, New York county.

John O'Connell was convicted in the court of special sessions of an alleged misdemeanor in violating statutory provisions as to master plumbers.   From a judgment affirming the conviction, defendant appeals.   Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, WILLIAMS, PATTERSON, and O'BRIEN, JJ.

William J. Fanning, for appellant.
John R. Fellows, for the People.

BARRETT, J.   The defendant was convicted of violating the provisions of chapter 602, Laws 1892, as amended by chapter 66, Laws 1893.   Section 1 provides for the formation, in each city of the state, of a board to be known in this county as the "Examining Board of Plumbers," and specifies how it shall be composed.   Section 5 compels "any person desiring or intending to conduct the trade, business or calling of a plumber or of plumbing, in any of the cities of this state, as employing or master plumber," to submit to an examination by the board, and makes it unlawful for him to conduct such trade, business, or calling without a certificate of the board as to his competency.   Any violation of the provisions of the act is made a misdemeanor.   Section 13.   This act has been declared constitutional (People v. Warden of City Prison, 144 N. Y. 529, 39 N. E. 686); and the only question for us to consider is whether the defendant has violated it.

The facts are simple and undisputed.   Plaintiff is, and long has been, chief engineer of the Fifth Avenue Hotel, and receives a fixed salary as such.   Among his other duties is that of hiring plumbers and steam fitters to assist him in performing work which he is un-

able to do by himself.  Between June 1 and 19, 1894, defendant hired some five or six journeymen plumbers to make repairs on the hotel property.  He was in control, and directed the work, but, on the other hand, the men, as well as himself, were paid by the hotel. It is admitted that he had not obtained the certificate required by section 5 of the act.  Is this, within the meaning of that section, conducting the business of "a plumber or of plumbing,  *  *  * as employing or master plumber"?  The plain reading of the statute shows that the defendant did not come within its terms.  It applies only to one who—First, pursues the trade of a plumber; and, second, is engaged in such trade as an employing or master plumber.  Defendant was not engaged in the trade of a plumber. That was not his business, trade, or calling.  He was the engineer of a building; and although it was part of his duty to do such jobs of plumbing as might arise in that building, and, if necessary, hire others to assist him in the work, yet this did not change his real calling, or make it that of a plumber.  It is a plain misuse of terms to say that, because of this incident to his real calling, he was engaged in the "trade, business or calling of a plumber or of plumbing."  Still less was he so engaged as employing or master plumber; not certainly as employing plumber, in view of the fact that the journeymen were employed and paid by the defendant's own employer.  But he was not even engaged as "master plumber," for the reason that the supervision contemplated by the statute was not called for by the character of the work actually done.  In a broad general sense, there was, undoubtedly, selection and supervision, but such supervision was not that of a master plumber.  It was, in substance, the supervision of a fellow journeyman, clothed temporarily by the common master with the power of direction with regard to ordinary repairs.  It was quite as though the proprietor of the hotel had himself directed the journeymen what to do, and had looked after them to see that they did it.  Such an employment is clearly not within the mischiefs which the act aimed to correct.  The act was intended to protect the public against people who jeopardized its health, by ignorantly pursuing a calling which called for expert knowledge.  It was certainly not intended to prevent a householder or a householder's servant from sending for and employing a journeyman plumber to stop a leak until such householder or servant had passed a civil-service examination.

The judgment of conviction should be reversed.  All concur.