Spear, O. J.
The first section of the act in question requires that every person, firm, or corporation, engaged in the business of plumbing, either as master or employing plumber or journeyman, shall first secure a license. The second section requires that any person desiring to engage In or work at the business of plumber shall apply to the president of the board of health, or other officer having jurisdiction in the locality where he intends to engage in, or work at, such business, and be examined as to his qualifications. But “in case of a firm, or corporation, the examination and licensing of any one member of such firm, or the manager of such corporation, shall satisfy the requirements of this act.” Section three provides that in every city, and in each town having a system of water supply or sewerage, there shall be a board of examiners consisting of the president of the board of health, the inspector of buildings, if any there be, and three practical plumbers. In localities where the required number of plumbers cannot be secured, such vacancy can be filled by the appointment of reputable physicians. The members shall be appointed by the board of health, and if there be no such board, then by the health officer. If there be no inspector of buildings then a practical plumber shall be added. Section four directs as to time, etc., of examinations, and that “the board shall examine said applicants as to their practical knowledge of plumbing, house-draining and plumbing ventilation, and if satisfied of the competency of the applicant, shall verify to the board of health.” The board is then to issue a license. The fee for a master or employing plumber *605 is to be five dollars and a journeyman one dollar, to be renewed annually. Section five provides for tbe appointment by the board of health of one or more inspectors of plumbing, who shall be practical plumbers, their term of office, their compensation and their duties. The sixth section requires the board of health to prescribe rules and regulations for the construction, alteration and inspection of plumbing and sewerage placed in or in connection with any buildings, subject to approval by ordinance of the council, and the board shall further provide that no plumbing work shall be done, except in case of repairs or leaks without a permit. Section seven prescribes punishment, of a fine from five to fifty dollars, for any violation, and that the license may be revoked for incompetency, etc., after hearing before the board subject to appeal to the state board of health. All money derived from examinations shall go to the board of health. .
Applying to the case the general presumption that the acts of the general assembly are to be held valid unless the contrary clearly appears, the natural order of inquiry leads to a consideration of the objections urged against this act. Two are deemed worthy of special notice. First: That the statute deprives of liberty and property without due process of law, and that it unreasonably interferes with the natural right of the individual to labor and enjoy the fruits thereof. Second : That the statute discriminates against the individual in favor of firms and corporations, and thus imposes unequal burdens upon persons of the same class.
1. Does the act unreasonably interfere with the right to labor ? That the right to labor and *606 enjoy its fruits is a natural right which may not be unreasonably interfered with, is, we presume, not denied by anyone. But it is equally well settled that it is one of the rights which may, under same circumstances, be subject to reasonable regulation. This principle finds examples in our laws termed Sunday laws, in those acts which regulate apprenticeships, the employment of children in factories and in theatrical and other exhibitions, and in a number of other instances which will readily occur. The acts referred to fall within the exercise of the police power of the state, that power, conceded to reside in the people’s representatives, which is rightfully exercised by the regulation of the use of private property, or so restraining personal action, as to secure, or tend to the comfort, health or 'protection of the community. Further examples of its exercise are found in the laws which require study and examination before one is permitted to pratice law, or medicine, or engage in the occupation of a, dentist or a pharmacist. If, then, the regulation of the business of plumbing, and the performance of the work of a plumber, may naturally be expected to promote the health of a community, or relieve of dangers- to health which otherwise might follow its careless exercise, and the legislation be appropriate to accomplish the object sought, it cannot, be said that such regulation interferes with a natural right or unreasonably prevents its exercise.
We are aware that an opinion prevails in some quarters, and has found expression in judicial utterances, that the pursuit of plumbing is a mere trade which may be easily mastered by anyone possessed of ordinary intelligence ; that the *607 plumber is not,, nor is he expected to be, an expert in the science of sanitation, and hence his work cannot have such relation to the public health as to justify its regulation.
True it is that the business of the plumber is not ranked with the learned professions, and that much of his work is mechanical merely, calling for the exercise of deftness of the hands rather than the possession of scientific knowledge. Yeta certain degree of training and experience is absolutely necessary to render one intelligent as to the ground work of his calling as well as competent and skillful in its exercise. He is required to put into our dwellings and public buildings tanks, pipes, traps, fittings and fixtures for the conveyance of gas, water and sewage, which require, among- other essentials, the keeping out and protection against gases which are destructive of health and not infrequently of life itself. That it is of the highest importance that the drainage and sewerage of our public buildings and private tenements should be as skillfully planned and executed as the modern standard of science admits, would seem not to be open to question. And surely it is reasonable to suppose that one who has been educated to understand the scientific principle necessarily involved in work of this character, and to comprehend the reasons and teachings of experience upon which it is based, and the evil results which may follow neglect to observe it, will be more likely to provide the needful safeguards than one who is ignorant upon the subject. It is conceded by those who doubt the power as well as the propriety of regulation of the work itself, that the legislature has power to provide' for a careful sanitary inspection of plumbing work, and in this *608 way secure a result, as to its system and sufficiency, which will tend toward the protection of the health of the general public. But it is difficult to perceive a reason for tbe exercise of the power last referred to which does not as well apply to the other, for if it be wise to devise means by which a good result may be obtained by careful inspection, it would seem clear that methods which are calculated to reduce the hazards of careless inspection would tend in the same direction. And, defects revealed by inspection would, it would seem be more likely to be remedied if the hands which should be called upon to do the work of correction, were guided by minds trained in the science of the business as well as skilled in the mere manipulation of the tools. The question really is, does the requirement of examination as to the fitness, reasonably tend to accomplish the object, is it appropriate to that end; not, necessarily does it fully accomplish it, nor does it make further care in the same direction unnecessary. We think it does so tend and is appropriate to the purpose, and that, therefore, the act does not unreasonably interfere with the right to labor. It is not here contended that the same high qualifications as to scientific acquirement should be required of the journeyman, one whose principal work is manual, as is required of the master plumber, the one who makes the plans and specifications for the work, and passes judgment upon the strength, durability and quality of the material and the devices for perfect work; nor, does that seem to be the import of the act, especially when it is noted that the fee for license charged is in the one case one dollar, and in the other five. If the examination be sufficiently searching to show *609 that the journeyman understands the principles governing his trade, and is sufficiently skillful to be able to produce good results, that would seem to satisfy the scope of this act.
This conclusion finds support in the case of the People v. Warden City Prison, 144 N. Y., 529 ; and is distinctly sustained in Singer v. The State, 72 Md., 464, where it is held that an act which provides that no person shall engage in the business of plumbing unless such person shall have received from the state board of commissioners of practical plumbing a certificate as to his competency and qualification, and providing a penalty for violation, does not violate in any sense, the constitutional rights of the workman, but is but the ordinary exercise of the police power of the State. See, also, Soon Hing v. Crowley, 113 U. S., 703; Mugler v. Kansas, 123 U. S., 623; Powell v. Pennsylvania, 127 U. S., 678, Railway Company v. Beckwith, 129 U. S., 26; and Dent v. West Virginia, do., 114.
2. But a graver objection inheres in the claim that the act imposes unequal burdens upon those of the same class. It will be recalled that the first section requires that all who engage in the business of plumbing, whether master or employing plumber or journeyman, shall first secure a license, .and that section two provides that in case of a firm, or corporation, the examination and licensing of any one member of such firm, or the manager of the corporation, shall satisfy the requirements of the act. That is, a journeyman, for whomever he works, must have a license, and an employing plumber, if not a member of a firm or a corporation, may not pursue the calling with, out a license. But a master or employing plumber *610 if he be a member of a, firm another member of which has procured a license, is exempt, although he may be one who has, as a journeyman, applied for a license and failed for incompetency. So, too in case of a corporation, if the manager is licensed, other members of the corporation may work without a license, without reference to their competency.
Our bill of rights prohibits the granting of privileges to one which are denied to others of the same class, and the imposition of restrictions or burdens upon certain citizens from which others of the same class are exempt, and section 26 of article 2, of the constitution requires that all laws of a general nature shall have a uniform operation throughout the State. A statute, therefore, which imposes special restrictions or burdens, or grants special privileges to persons engaged in the same business under the same circumstances, cannot be sustained, because it is in contravention of the equal right which all are entitled to in the enforcement of laws and in the enjoyment of liberty, and in the enjoyment of an equal right in the acquisition and possession of property, and so is not of uniform operation.
The constitutional objection to this statute is that it operates unequally in that it imposes the burden of an examination and license fee upon certain persons, and exempts others of the same class, pursuing- the same business in the same way.
It is contended that the act permits firms and corporations to employ such journeymen as they may choose, whether they be licensed or not, but we are not impressed that it will bear this construction. It is further suggested that the act *611 does not prohibit the doing of plumbing work wholly by apprentices. If it is open to this construction, an additional reason is thus afforded for holding it invalid, but the spirit of the act would not, we think, permit this.
Objection is made to the composition of the examining board on the ground that one who has been appointed a member of the board, although possibly inexperienced and incompetent, may, without any test whatever, continue his occupation. We deem it enough to say as to this, that the act does not so provide. It would be possible, of course, that one appointed on the board might meet with greater favor from his fellows in his examination than another, but this possibility would not render the act itself invalid. It also might seem, at first blush, that the appointment of a board to examine others as to fitness and qualifications, the members of which may not have themselves been examined as to their qualifications, is a trifle incongruous. It is possible that the law in this respect might be improved. Yet there must be a start somewhere along the line, and the objection goes to the efficiency of the service rather than to the power of the legislature to authorize the method.
Believing that the act does discriminate unjustly between persons in the same calling, we agree with the conclusion of the learned judge of the court of common pleas, and, for the reasons stated, the exceptions are

Overruled.