In the Matter of the Application of OSCAR GOLDSCHLAG, Petitioner, for a Peremptory Mandamus Order against WILLIAM F. DEEGAN, Tenement House Commissioner of the City of New York, Respondent.

Supreme Court, New York County, December 12, 1929.

*Joseph W. Sterling,* for the petitioner.

*Arthur J. W. Hilly, Corporation Counsel,* for the respondent Deegan.

*Harold Riegelman, Special Assistant Attorney-General, Robert P. Beyer* and *H. H. Nordlinger,* for the respondent Hamilton Ward, as Attorney-General.

MULLAN, J. The petitioner prays for a peremptory mandamus order requiring the respondent, the tenement house commissioner of the city of New York, to accept and receive for filing certain plans and specifications for the erection and construction of a proposed apartment house, and requiring, further, that the respondent consider the said plans and specifications, and either approve or disapprove them. The petition, as here presented, raises but one question, which is: Are the provisions of section 300 of the Multiple Dwelling Law, being chapter 713 of the Laws of 1929 (Consol. Laws, chap. 61-a), constitutional in providing that certain services in connection with the work of multiple dwelling construction may be performed only by architects, the petitioner contending that such requirement is invalid for arbitrarily and unreasonably discriminating against persons engaged, as is plaintiff, in the occupation or profession of engineering? An attack upon the statute as violative of the home rule provisions of the State Constitution was repulsed in *Adler* v. *Deegan* (251 N. Y. 467). Concededly a large part of the work of preparing for the construction of a modern multiple dwelling is actually done by persons who are generally called and who call themselves engineers, and concededly also such persons have in the past filed such plans as those here in question with the city authorities having supervision of such matters. And, while the respondent submits numerous affidavits designed to show that difficulties and confusion have arisen from the employment of engineers rather than architects, in the business of filing plans, the case made by the respondent in that respect is not convincing. It would not, I think, serve any useful purpose to discuss the numerous statutes regulating occupational services and the decisions they called into being. The architect of the future will probably be more of an engineer than of what was formerly known as an architect. But I think it may be safely said that, speaking of to-day, there are many elements of service in the preparation of plans for the construction of a building of whatever type, and the superintendence of construction, that may be more properly left to what we now know as an

architect than to what we now know as an engineer. Certainly, an engineer is not to be presumed to be "one who understands architecture." ("Architect," Century Dict.) Nor is he to be presumed to be a "skilled professor of the art of building." ("Architect," Murray's New Eng. Dict.) It is to be expected that the Regents will shortly provide tests for the determination of what knowledge and experience a man must have in order to practice the profession of architecture. Until they lay down rules that would permit to act as an architect a man who makes no claim to being an architect, as that term is now universally understood, I think an engineer, as that term is now universally understood, may not hold himself out or act as an architect.

"In determining whether statutory requirements are arbitrary, unreasonable, or discriminatory, it must be borne in mind that the choice of measures is for the Legislature, who are presumed to have investigated the subject and to have acted with reason, not from caprice. Legislation passed in the exercise of the police power must be reasonable in the sense that it must be based on reason as distinct from being wholly arbitrary or capricious, but when the Legislature has power to legislate on a subject, the courts may only look into its enactment far enough to see whether it is in any view adapted to the end intended. If it is, the court must give it effect, however unwise they may regard it, or however much they might, if given the choice, prefer some other measure as more fit and appropriate." (*People* v. *Griswold*, 213 N. Y. 92, 96, 97.) Applying the test so laid down, I am unable to see any such clear case of unconstitutionality as to permit a court of first instance to interfere with what was very evidently the considered judgment of the Legislature. In other words, I am of the opinion that the legislation here assailed does not so "plainly transcend the limits of the police power of the state" (*People ex rel. Nechamcus* v. *Warden of City Prison*, 144 N. Y. 529) as to require or permit a court of original jurisdiction to pronounce the legislation invalid.

The application is denied, without costs.