## Court of Appeals.

Oct. 2, 1900.

## THE PEOPLE v. BUFFALO FISH COMPANY, LIMITED.

(Aff'g 45 App. Div. 631.)

GAME LAW—POSSESSION OF FISH IMPORTED FROM FOREIGN COUNTRY.

Laws 1892, ch. 488, §§ 110, 112, which forbid the "possession" of certain fish, refers only to the possession of such fish as are caught in the waters of this state, and not those procured in a foreign country.

GRAY, J., dissenting.

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the Fourth Judicial Department, entered November 29, 1899, affirming an interlocutory judgment in favor of defendant entered upon an order of Special Term overruling a demurrer to the defendant's answer.

The People brought this action to recover from the defendant, a domestic business corporation, certain penalties provided for in the provisions of the Fisheries, Game and Forest Law of 1892, as amended, for having in its possession during the close season certain fish described as pike, pickerel, bass and muscallonge. A first cause of action charged a certain violation of the provisions of section 110 of the act, which concern pike and pickerel; a second cause of action charged a further violation of the provisions of the same section which concern bass and a third cause of action similarly charged a violation of the provisions of section 112 of the same act, which concern muscallonge. The defendant's answer admitted having the fish in its possession, as charged, and set up, by way of new matter in defense, that the fish in question were fresh water fish and were caught and killed within the provinces of Ontario and Manitoba, in the Dominion of Canada, at a time when it was lawful to catch and kill the same there; that they were there purchased by the defendant and were imported through the customs department of the United States, under the provisions of the United States tariff laws, and the fixed duty thereon paid; that the acts of the legislature of the State of New York conflicted with the acts of Congress in regulating the dealing in fish as an article of commerce, and infringed upon the interstate commerce provisions of the Federal Constitution and are unconstitutional and void, and, further, that they are violative of the provisions of the State Constitution in depriving the defendant of its property without due process of law. To the new matter alleged in the answer the plaintiff demurred, upon the ground that it " is not sufficient in law upon its face to constitute a defense." The plaintiff's demurrer was overruled at the Special Term and upon appeal to the Appellate

Division, in the Fourth Department, the order overruling the demurrer was affirmed. The Appellate Division certified three questions: *First.* " Are the provisions of section 110 of the Fisheries, Game and Forest Law, as amended by chapter 109 of the Laws of 1898, prohibiting the possession of pike and pickerel during the close season for such fish in New York state, in conflict with any provisions of the State and Federal Constitution when applied to pike and pickerel imported from Canada, under the customs laws and regulations of the United States which have been duly complied with, or do the facts alleged in the defendant's answer constitute a defense to the first cause of action set forth in the complaint?" The second question certified is similar to the first one, except in its reference to the possession of bass during the close season, and the third question is similar to the others, except that it relates to the possession of muscallonge during the close season, within the provisions of section 112 of the Fisheries, Game and Forest Law, as amended by chapter 531 of the Laws of 1896.

O'BRIEN, J. The statute of this State for the protection of fish and game forbids any person, under pain of indictment and civil penalties, to either " catch, kill or be possessed " of certain fish named during what is called the close season therein prescribed. The defendant had in its possession during that season three different kinds of fish described in the statute, and this action was brought to recover the penalties denounced against offenders for violation of the law. The defendant in its answer alleged that its business is dealing in fresh fish on an extensive scale, and for that purpose maintains stores in various cities of the State; that it purchased the fish in question from dealers in Ontario and Manitoba, in Canada, imported it into this State for sale at Buffalo under the revenue laws of the United States, paying the duties thereon; that in so doing it was lawfully engaged in trade and commerce. The plaintiff demurred to this answer, thus admitting the facts, and insists that in law they do not constitute a defense. The courts

below held that the demurrer was bad and that the facts con-
stituted a good defense.

The appeal presents two questions: *First,* with respect to
the true meaning and scope of the statute, and, *secondly,* if it
means what the plaintiff insists it does, with respect to its
validity. I think that the statute is valid when reasonably and
fairly, construed with reference to its purpose and object. It
is a penal statute and, therefore, not to be enlarged by con-
struction or applied to cases not within the intention. We all
agree that the purpose was to protect fish within the waters
of this State. There is absolutely no room for disagreement
on that point. The legislature had no interest or purpose to
protect fish in a foreign country or in some other State, and
had no power in that regard. Statutes should be construed,
if possible, so as to avoid absurdity and manifest injustice.
People v. Jaehne, 103 N. Y. 182. They should receive such
construction as to render them practicable, just and reason-
ably convenient. Rosenplaenter v. Roessle, 54 N. Y. 262.
They should be construed to avoid, if possible, constitutional
restrictions and understood in a sense within such limitations,
rather than in conflict with them. Sage v. City of Brooklyn,
89 N. Y. 189. Their validity must be determined solely with
reference to constitutional restrictions, and not by natural
equity or justice. Bertholf v. O'Reilly, 74 N. Y. 509. The
statute in question does not in terms, or by any reasonable
implication, forbid a person to "catch, kill or be possessed"
of fish in a foreign country. We all agree that our statute
does not forbid a person to "catch or kill" fish of any kind
in Manitoba, but it is said that when one brings the fish so
caught or killed into this State the penalties of our statute
attach to him at once. With all respect I am constrained to
say that this is not a reasonable or tolerable interpretation of
a penal statute. What it means and all it means is to forbid
any person to catch, kill or be possessed of the fish described
from the waters of this State. The word "possessed" obvi-
ously refers to those fish the catching or killing of which is

forbidden, that is to say, fish in the waters of this State, and not those procured in a foreign country. It is simply a perversion of the statute to hold that the mere possession by any person within this State of the fish described in the statute during the close season is a violation of it, without regard to the place where it was procured, or to the manner obtained. Commonwealth v. Hall, 128 Mass. 410; People v. Neil, 71 Mich. 325.

It has long been the practice with keepers of summer hotels in this State to purchase at the proper season of the year in Canada, and in other States, game in large quantities and preserve it in cold storage for use in the close season, but if this statute is to receive the narrow and literal reading contended for they are all subject to indictment and civil penalties, since they are certainly *possessed* of this game during the forbidden period. There is scarcely a county of this State in which private fish ponds are not to be found, constructed and maintained by private persons on their own land, in which fish of the species described in the statute are kept and propagated. The fish in such ponds are private property. They have been reduced to possession and are within the dominion of the owner. Is it a violation of the statute for a person to catch or kill fish from his own private pond? If it is, and the owner refrains from it during the close season, he will still violate the law, since he is *possessed* of the fish all the time, and the only way he can escape from the pains and penalties of the statute is to open the pond and let the fish out.

In the case at bar the statute is pushed by a literal reading to a point quite as unreasonable. In my opinion the law has no reference or application to a case where the fish have been imported from a foreign country. The conceded facts of this case take it out of the reason and policy of the law.

But it is argued that unless the statute is construed to inhibit the possession, during the close season, of fish imported from a foreign country, it cannot be enforced, but will be evaded by false swearing. This means that if the summer hotel keeper,

the owner of the private pond and the foreign importer, under the circumstances stated, are allowed to escape, then some one else may falsely pretend that his possession of fish during the close season was obtained in a similar manner, when in fact he is really guilty of violating the law by procuring them from the waters of the State.    This argument seems to be based upon the notion that unless the innocent are convicted the guilty may escape.    It assumes that in the interpretation of a penal statute, such a remote danger must be anticipated and guarded against.    I think it puts rather too much faith in the potency of perjury as a defense to an honest claim, and too little in the capacity of courts and juries to distinguish truth from falsehood.    When it was proposed to change the criminal law and permit an accused person to testify in his own behalf, the proposition was for a long time resisted by similar arguments. It was said that the temptation to swear falsely under such circumstances was so great that crime could never be punished if the accused was permitted to testify in his own behalf; whereas experience has shown that a person on trial for a penal offense very rarely, if ever, helps his case by falsehood. Indeed, it may be safely asserted that the new law, instead of thwarting justice, as anticipated, has been a very great aid in the enforcement of the criminal law.    There is not the slightest reason for giving a strained and unnatural construction to the statute in question in order to meet such an imaginary danger. The possession of the fish or game at the forbidden season, within this State, is *prima facie* evidence that the possessor has violated the law, and the burden is then cast upon him of proving facts to show that the possession was lawful.    If he has no better defense than one based on falsehood, it will be entirely safe to trust to the power of cross-examination and the intelligence of the court and jury to detect and expose it, as in offenses of much greater magnitude.    The contention of the People in this case is virtually to the effect that possession in all cases, instead of being *prima facie* proof, is conclusive, and no facts can be shown to explain or to take the case out

of the statute. The accused would not even be permitted to show that he acquired the possession within the State at a time when it was perfectly lawful to do so.

But if this is what the statute means and it is to be held that the conceded facts of this case are within its penal provisions, then I think it is clearly invalid, as in conflict with the commerce clause of the Federal Constitution. In this view of the case, the question and the only question is whether a State statute can be lawfully enacted to prohibit a citizen of this State from buying fish in Canada, importing it into this State under the revenue regulations of the United States, and exposing it for sale here. There is no question at all about the competency of the States, in the exercise of the police power, to enact game laws. The question is whether such laws can be so framed as to prohibit or restrict by penal provisions the importation of an article of food in universal use. That fish is such an article of food and the subject of foreign and interstate commerce, I assume no one will deny. That the purchase of fish for food in a foreign country and its importation here for sale, as such, is a branch of foreign commerce, is too clear for discussion. That the statute in question forbids the possession, and consequently the sale here, of an important article of food, is equally clear. Upon the construction contended for, the penal provisions of the statute absolutely inhibit the possession of the property at a season of the year when it is most in demand as an article of food. That the statute operates as a restriction upon the defendant's business as an importer and dealer in fish, no one can doubt. That a statute so operating is in conflict with the exclusive power of Congress to regulate foreign commerce is not questioned, and yet the contention is made with great earnestness that this statute is perfectly valid. The reasoning upon which this conclusion is based, if I understand it, is that the State has power to pass game laws, which no one denies; that the object of this statute was to protect game in this State and not to interfere in any way with foreign commerce, and, since the purpose

that the legislature had in view was lawful and laudable, the statute is good, although, in fact, it does prohibit or restrict the importation of fresh fish as an article of food. If the legislature did not intend to restrict foreign commerce, as is asserted, then it is obvious that the statute should be read and interpreted according to that intention, in which event it would have no application to the facts of this case; but, strangely enough, it is given a meaning which imputes to the lawmakers just the contrary, since it is said that the possession of imported fish is in terms inhibited. The good intentions of the legislature will not save a State statute from condemnation when it in fact conflicts with the supreme law of the land. If it restricts the freedom of commerce, as this certainly does, then it is void, no matter what name may have been given to it, or what good purpose it was intended to promote. An act to protect game, or to promote health may be so framed and applied as to restrict or regulate traffic in some article of commerce, and when it does it is just as obnoxious as if passed for that purpose under a title expressing that very intent. It will not do to hold that the Constitution can never be violated except when the legislature intends to. It is frequently violated with the very best intentions. People v. Hawkins, 157 N. Y. 1.

I pass over the suggestion that the statute may be considered as a health law and applied as such, since the sport of fishing and hunting promotes health. The number of people that can indulge in the sport are so few, comparatively, and the number who are obliged to buy fish in the market for food so large, relatively, that a defense of the law as an agent or handmaid of the public health cannot be taken quite seriously. Reasoning of that kind enables us to deceive ourselves with names and words, but fails to prove that a law which prohibits the sale of a healthy article of food, imported from a foreign country, is a valid exercise of power. It might as well be argued that a statute prohibiting the sale or possession of intoxicating liquors imported from abroad or from another State

is not what it professes to be, but a health law in disguise, since it operates to restrain a few people from ruining their health by excessive drinking. The question in this case is not solved or advanced one step by arguments to show that the statute is a healthful exercise by the State of the police power with respect to internal objects. We must always come back to the inquiry as to its effect upon trade in an article of food, when applied to the conceded facts of this case.

The law on the question has so often been stated by the highest court of the land, in accordance with the rules already stated, that much further discussion would be out of place. I will recall only a few of the more recent cases. In Bowman v. Chicago, etc., Railway Co. 125 U. S. 465, it was held that a State has no power to enact laws for the purpose of protecting its people against the evils of intemperance, which, in fact, operate to regulate commerce and forbid the importation into the State of intoxicating liquors without a certificate first obtained from the State authorities that the person to whom the goods are consigned is authorized to sell liquor under the State law, although the act was passed without any purpose of affecting interstate commerce, but as a police regulation to protect the health and morals of the people. The same doctrine was repeated in a more recent case. Scott v. McDonald, 165 U. S. 58. It was again held in Leisy v. Hardin, 135 U. S. 100, that liquors are lawful subjects of commerce and a State is without power to restrict or prohibit their importation from a sister State, nor, when imported, prohibit their sale. In Minnesota v. Barber, 136 U. S. 313, it was held that a State statute, conceded to have been passed in good faith for the protection of the public health, which forbids the sale within the State of certain meat products, unless the animals were first inspected therein before they were killed, is unconstitutional and void. The same doctrine was subsequently reaffirmed. Brimmer v. Rebman, 138 U. S. 73.

In Schollenberger v. Pennsylvania, 171 U. S. 1, it was held that a statute of the State which forbids any person from sell-

ing, exposing for sale or having in possession oleomargarine was invalid, in so far as it operated to prohibit the introduction of the article into the State from another State. It was admitted that all these statutes were based upon the undoubted police power of the State to protect health and morals, but the good intentions with which they were enacted did not save them from condemnation, since they operated as a regulation of, or restriction upon, interstate commerce, and so far as they had that operation they were void.

If there is any difference in principle, or any sound or reasonable distinction pertinent to the question now before us, between a statute intended to protect fish, and to foster and promote sport, or the pastime of hunting and fishing, and those to protect health by providing for an inspection of animals to be used as meat, to promote temperance and morality by forbidding the sale of liquors, or to suppress fraud by restricting the sale of imitation butter as food, I have not been able to perceive it, and I may add that no one has yet attempted to state it. If there is any distinction at all it would be against and not in support of a statute intended only to promote sport and pleasure. That is all laudable enough, but not so important to the body politic as laws to protect health, or suppress crime and promote morality; all of which have been held to be void when so framed as to regulate or restrict interstate or foreign commerce. If the statute in question has the meaning and effect claimed for it, then its operation cannot be better illustrated than by the admitted facts of this case.

It seems that had the defendant at the time it imported fish also imported meat, liquors or oleomargarine, all the latter articles would be protected from State laws restricting their sale or possession by the commerce clause of the Constitution, while the fish would be subject to the penal restrictions of the game laws. I cannot believe that this is a reasonable or tenable view of the law applicable to this case.

It will not be profitable to review or discuss the game laws of other States or countries, or the decisions of local courts

interpreting the same. It may be admitted that these States have game laws as drastic as our own, but that has no bearing on the question now before us. The learned counsel for the plaintiff has not found any authority in any State court to sustain the proposition that game laws, however framed, can be so applied as to prohibit the importation of an article of food in general use from a foreign country or another State into this State and exposing it for sale here. It must always be borne in mind that this is the only question that we are now concerned with. The statutes and decisions in other States furnish no light on this question. Indeed the strongest case that the learned counsel for the People has been able to find in favor of his contention is one decided by this court. Phelps v. Racey, 60 N. Y. 10. But it is admitted that the principle upon which that case was decided was subsequently overruled by the Supreme Court of the United States, and that upon the question now under consideration it is no longer law. Pierce v. New Hampshire, 5 How. (U. S.) 504; Leisy v. Hardin, 135 U. S. 100, 118; Bowman v. Chicago, etc., Ry. Co., 125 U. S. 507. That case rests entirely upon the proposition that a State law regulating foreign or interstate commerce is valid unless Congress has made some regulation on the subject, a principle which has been completely overthrown by the court of last resort, as will be seen from an examination of the cases cited.

Passing from the collection of State statutes for the protection of fish and game and the decisions of State courts as to their scope and effect, which occupy such a prominent place in the brief of the learned counsel for the People, it would perhaps be unjust to his argument to ignore two cases in the Federal court which he claims support his contention in some way. If they do, they are entitled to great weight and consideration, since the decisions of that court upon this question are the supreme law of the land. If they do not, it may be safely asserted that the learned counsel has found no controlling authority to support the proposition that a State may

enact a statute which makes it a penal offense for the defend-
ant to buy fish in the markets of Manitoba or Ontario in
Canada, import it into this State and have it in his possession
at Buffalo. If the court of last resort has ever said anything
tending to support this proposition, even by construction or
fair implication, it is doubtless authority binding upon this
court. But it is very clear, I think, that it has not.

Lawton v. Steele, 152 U. S. 133. That case decided three
propositions, none of which have any relation to this case.
(1) That the State had the power to regulate the manner of
taking fish from waters within its jurisdiction. (2) That it
had power to forbid fishing in such waters with nets. (3)
That the nets destroyed in that case, being of comparatively
small value, the State had power to declare them a nuisance
and summarily abate them.

Geer v. Connecticut, 161 U. S. 519. That case decides the
following points: (1) That a State statute which forbids the
killing of game for the purpose of conveying the same beyond
the limits of the State, or having it in possession with that
intent, is valid. (2) That wild game within the State belongs
to the whole people in common, and that legislation to pre-
vent its extinction by conveying it out of the State was not in
conflict with the Constitution. (3) That the individual who
caught or killed it within the State acquired not an absolute,
but a qualified property in it, since the use or enjoyment was
limited to the boundaries of the State. (4) That since the use
or enjoyment was limited to the people of the State it was not
the subject of foreign or interstate commerce, though it was
the subject of internal commerce. (5) Not being the subject
of foreign or interstate commerce, but merely of internal com-
merce, the statute was not in conflict with the commerce clause
of the Federal Constitution.

Every proposition embraced in these two cases may be and
is freely admitted, but not one of them has any bearing on
this case. In the first case it was held that the State had
power to forbid fishing with nets, and in order to make the

prohibition effectual, to declare the nets a nuisance and destroy them summarily without liability for compensation. In the second case it was held that, inasmuch as the State owned all the game within its limits, it might legislate to keep it there, and could forbid any one from conveying it out of the State and enforce such prohibition. But I am unable to see how all this or anything in those cases helps the plaintiff's position in this case. Here the defendant bought fish in Canada as a commercial article, where it was lawfully exposed for sale, imported it into this State under revenue laws, and had what was clearly his own property in his possession, and because he is possessed of his own property so acquired the statute in question subjects him to indictment and civil penalties. It would be difficult in this view to imagine a plainer or more direct interference with foreign commerce than this case presents.

The main proposition, after all, in support of the plaintiff's contention is based more upon policy and expediency than upon law. When fairly stated it is this: A statute to protect fish and game within the State does not protect unless it inhibits the importation of fish and game from a foreign country or another State. When this proposition is carefully examined it will be found to be not only without any foundation in fact, or in experience, but when applied to cases like the one in hand the manifest tendency is to defeat the very object of the law, which, of course, must be assumed to be protection. The individual who is permitted to hunt and fish in Canada or in another State, and bring with him here the fruits of his labor, will do very much less of hunting and fishing at home. If his warfare upon game or fish is carried on in a foreign country, or in another State, it would seem to be unwise to prevent him for the purpose of protecting fish and game at home. The game law that cuts off the supply from abroad diminishes rather than increases and protects the supply at home. Legislation that would prohibit the defendant from drawing a supply of fresh fish from Canada during the close season

simply furnishes a strong temptation to procure it from the waters of this State, even in violation of law. It is said that there is a passion inherent in man to kill or capture game in spite of penal laws forbidding it. If that be so it would seem to be wisdom to allow the passion to expend itself by permitting those who enjoy it to capture and become possessed of fish or game in Canada, or in other States where the law permits it, rather than furnish a temptation to violate the law at home during the close season. To forbid the taking of fish in a foreign country, or in another State where it is lawful, by our own citizens during the season, or the possession within the State of what is so taken, tends to exterminate rather than protect fish here. The legislator who would protect the forests of this State by prohibiting the importation of lumber or timber from Canada, or from other States, would be rated as a visionary theorist, but in a certain degree that is the principle upon which the argument for the People in this case proceeds for the protection of fish and game. What is true with respect to the forests is equally true of every other natural product of the soil or of the waters of the State, so that it is plain that the plaintiff's theory of this case, when put into complete operation all around the boundaries of the State would, instead of protecting fish and game, go far to exterminate both.

But all these considerations are subordinate and collateral to the main question, and when they are all weighed and examined we are brought back again to the real situation which the case presents. Admitting, for the purposes of argument, that the statute in question means just what the plaintiff's counsel claim for it, the important fact still remains that Congress has permitted the defendant to import fresh fish upon payment of certain duties. It has paid the duties and complied with the Federal regulations, but when the article is brought here the State steps in and forbids the defendant to have it in its possession, and, of course, forbids the sale. This creates a direct conflict between the regulations of Congress and those of the State, and, consequently, the latter must yield

to the former.    The State had no power to extend its police legislation to such a transaction, and, of course, had no power to forbid what Congress had expressly permitted.

The case, in my opinion, was correctly decided by the courts below, and the judgment should be affirmed, with costs.

GRAY, J. (dissenting).    The questions certified for our decision are questions of law, which were raised below by the demurrer to the defenses interposed in the action.    They are these:    Are the facts that these fish were lawfully taken in the Dominion of Canada and that they were purchased there by the defendant and by it imported into the State of New York, upon payment of the duties fixed pursuant to the United States tariff laws, a good answer to the claim of the People that the Fisheries Law has been violated by having such fish in possession, and is the State statute, for inhibiting the possession during the close season of this State, in conflict with the Federal Constitution, or with the Constitution of this State?

It is not, nor can it be, seriously contended, as I think, that the law is in conflict with any of the provisions of the Constitution of the State.    The case of Phelps v. Racey, 60 N. Y. 10, should be conclusive upon that point; whatever may be said of it upon the Federal question raised.    The Federal question is whether the statute, in the particular feature in question, violates, or infringes upon, the provisions of the Constitution of the United States, which authorize Congress to regulate commerce with foreign nations and between the States. The defendant's contention upon that ground has been sustained below.    The theory of Mr. Justice LAMBERT's opinion at the Trial Term, which was adopted by the justices of the Appellate Division, is, as I apprehend it, that in making unlawful the possession of property, which has been imported under the sanction of the Federal tariff laws, the enactment of those provisions of the Fisheries statute by the legislature conflicted with the power vested in Congress under the commerce clause of the Federal Constitution referred to.

It was, also, observed by the learned justice, in his opinion, that "the object of the statute is to protect the game fishes in the waters of the State, and that object is not promoted by depriving citizens of their property in fish, which have been caught and killed outside of the jurisdiction of the State, and which have become component parts of commerce, and the law cannot, therefore, be sustained as an exercise of the police power except as it deals with those fish which may have been taken within the jurisdiction of the State." Prior to this decision of the learned court below, Phelps v. Racey was regarded as settling the question of the legislative power to do just what has been done in the law now attacked. That was an action which was brought under the Game Law of 1871, to recover penalties against the defendant for having in possession, contrary to the statute, certain game birds during the close season. The defense was that the defendant became possessed of them during the open season, or they were received from the States of Minnesota, or Illinois, where the killing at the time was lawful. Thus the situation was the same as in the present case; so far as it presented the legal questions. It was there held that the fact alleged that the game "was either killed within the lawful period, or brought from another State where the killing was lawful" constituted no defense; inasmuch as the penalty was denounced against the selling or possession, irrespective of the time or place of killing. The objection of a want of power in the legislature to pass the act was held to be untenable and it was said that the measures best adapted for the protection and the preservation of game "are for the legislature to determine and the courts cannot review its discretion. If the regulations operate, in any respect, unjustly or oppressively, the proper remedy must be applied by that body;" and the provisions of the act, though seemingly stringent and severe, were not "foreign to the objects sought to be attained, or outside of the wide discretion vested in the legislature." In speaking of the argument that the law violated the commerce clause of the Federal Con-

stitution, Chief Judge CHURCH deemed it unnecessary to consider " how far the exercise of the power of Congress under the provision would interfere with the authority of the State to pass game laws, and regulate and prohibit the sale and possession of game either as a sanitary measure or for its protection as an article of food. It will suffice for this case that the statute does not conflict with any law which Congress has passed on the subject."' The authority of this case upon the constitutional right to enact such laws has been widely recognized in the State courts, where similar statutory provisions were assailed, and, among other cases, might be cited those of Magner v. The People, 97 Ill. 320; Commonwealth v. Savage, 155 Mass. 278; State v. Rodman, 58 Minn. 393, and Roth v. State, 7 Ohio C. C. 62. In England the case of Whitehead v. Smithers, L. R. (2 Com. Pl. Div.) 553, may ·be referred to as in point; where Chief Justice COLERIDGE observed of the act for the protection of wild fowl, passed in 1876, that " the object is to prevent British wild fowl from being improperly killed and sold under pretense of their being imported from abroad." And see Price v. Bradley, L. R. (16 Q. B. Div.) 148, upon the Fresh Water Fisheries Act.

In the court below, Phelps v. Racey, was deemed to be no longer controlling; for the reason that its principles have been " overruled by subsequent judicial authority." The reference is to that part of the opinion which suggests the proposition that, in the absence of the neactment of a law by Congress, the States may regulate commerce among themselves. This doctrine, though supported by authority at the time (Pierce v. New Hampshire, 5 How. [U. S.] 504), would seem to have been overruled by later cases, (Leisy v. Hardin, 135 U. S. 100; and Schollenberger v. Pennsylvania, 171 ib. 1); which hold that laws inhibiting the receipt of an imported commodity, or its disposition, amount essentially to a regulation of commerce with foreign nations, or among the States. I consider, however, that the Fisheries Law presents no conflict with the commerce clause of the Federal Constitution and that it is

purely a governmental regulation, within the legitimate exer-
cise of the police power of the State, relating to a matter es-
sentially of internal policy, as affected by a common public
interest. It was quite unnecessary to the decision of Phelps v.
Racey that Chief Judge CHURCH should have expressed him-
self as he did upon the question of the bearing of the statute
upon the commerce clause of the Federal Constitution, and
it did not prevent the decision from being controlling upon
the main question. There is no question of interstate or for-
eign commerce, in my opinion, but, merely, one of whether,
in the interest of the protection and preservation of game
fishes, the legislature may not competently enact a statute so
stringent in its provisions as to insure the accomplishment of
the end in view; however it might result in an apparent re-
striction of the liberty of the citizen. Compared with the
legislation which was sustained in the grain elevator cases,
People v. Budd, 117 N. Y. 1, affirmed in 143 U. S. 517,
where the right of the legislature to fix the maximum charge
which a person might make, in his own business, for elevating
grain, and to limit the charge for shoveling to the actual cost,
was upheld upon the theory that the business was one which,
by reason of its magnitude and character, was affected by a
public interest, this statute is mild, indeed. The exercise of
the police power, which is necessarily vested in the State gov-
ernment for the proper regulation of matters which concern
the well-being and prosperity of the community, within con-
stitutional limits, rests in the wise discretion of the legislature.
When its operation is in the direction of so regulating the use
of private property, or of so restraining personal action, as to
secure, or to tend to, the comfort and welfare of the commu-
nity, no constitutional guaranty is violated. People v. Ewer,
141 N. Y. 129. It is implied in the social compact that, in
matters of public concern, the interest of the individual shall
always yield to that of the public. The legislature is not the
final judge as to what is a proper exercise of the police power
and its acts in that direction are subject to review in the courts;

but, where a public and beneficial purpose is evident, the courts will not substitute their judgment for that of the legislative body. The remedy must be found in an appeal to the legislative wisdom.

In Geer v. Connecticut, 161 U. S. 519, a case arising under the Connecticut statute in relation to game birds, it was said that " the right to preserve game flows from the undoubted existence in the State of a police power to that end, which may be none the less efficiently called into play, because by doing so interstate commerce may be remotely and indirectly affected (citing cases). Indeed, the source of the police power as to game birds   *   *   *   flows from the duty of the State to preserve for its people a valuable food supply." Citing Phelps v. Racey and other cases. In Lawton v. Steele, 152 U. S. 133, affirming our decision in 119 N. Y. 226, the police power of the State was discussed and it was said that " the preservation of game and fish has always been treated as within the proper domain of the police power," and that " the State may interfere whenever the public interests demand it and in this particular a larger discretion is necessarily vested in the legislature, to determine, not only what the public interests require, but what measures are necessary for the protection of such interests." Citing cases. " It must appear," the opinion holds " *first,* that the interests of the public generally, as distinguished from those of a particular class, require such interference; and *second* that the measures are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals."

The object of this statute was to protect and preserve certain game fishes during the breeding season; an object, manifestly, in which the people of the State may be presumed to be more or less keenly interested and which is recognized, as Judge CHURCH observed, in all civilized countries. The purpose is to protect certain fishes within our jurisdiction, with no reference to those of other States, or countries. If they may be brought into the State within the close season here, as

articles of commerce protected by United States laws and, therefore, placed beyond the reach of State laws declaring and regulating an internal policy, the result would be to facilitate evasions of the law and to make detection difficult, if not impossible. The general tendencies of human nature, it might, not inappropriately, be observed, are such as to make necessary so strict a law as to render obedience to the mandate certain. The statute aims at preventing game fishes from being unlawfully taken and exterminated, and any regulation, which tends to secure that aim, should be regarded as a legitimate and fair exercise of the police power.

Not an arbitrary, but a wise and politic purpose, is evident in this statutory regulation; touching as it does the interests of the people in a form of food supply, as in a form of sport. I cannot understand its being likened to such legislation as was condemned in People v. Hawkins, 157 N. Y. 1. There the act required all goods made by contract labor to be labelled " convict made," when possessed and offered for sale, and it was held to be repugnant to the commerce clause of the Federal Constitution; because " a regulation of commerce by means of which the value of merchandise made in another State was to be depressed, or its sale prohibited." It was a restriction upon the freedom of commerce to permit the same articles to be put upon the market freely, if made in factories; when, if made in a prison in another State, a citizen, having lawfully purchased them, could not expose them for sale without branding or labelling them as " convict made."

Nor can I perceive that the doctrine of the oleomargarine cases is applicable. Schollenberger v. Pennsylvania, 171 U. S. 1. There is a clear distinction between legislation, which discriminates with reference to a manufactured food product, not impure nor unhealthful, and legislation, which seeks to preserve the game fishes within the waters of the State, either as a natural article of food supply, or as a form of public sport. In the one case, there is an interference with commerce, as commerce; in the other case, commerce is not aimed

at, but the preservation from extermination of the People's property in game fishes. In the one case, there is interference with commercial dealing in a manufactured product, which, not unreasonably, may be said to lack justification in those ordinarily recognized principles upon which the police power of the State is properly exercised; while, in the other case, the preservation from extermination of the game fishes within the jurisdiction of the State, reasonably, commends itself as legislation in the interest of preserving to the People a valuable natural and common food supply, which is deemed in danger of being destroyed and which it is, therefore, the duty of the State to prevent by the exercise of its undoubted police power. The Schollenberger case dealt with the prohibition by legislation of oleomargarine as a law " which prevents the introduction of a perfectly healthful commodity, merely for the purpose of in that way more easily preventing an adulterated and possibly injurious article from being introduced. We do not think this is a fair exercise of legislative discretion, when applied to the article in question." Per PECKHAM, J., at p. 15.

I think if importations may be excluded, which might affect the public health, that they may be excluded, if tending to endanger the enforcement of a law intended to protect and to preserve the People's property rights in game and fishes. There is no danger that legislative encroachments upon individual rights will be encouraged by such a decision. The presumption, which obtains in favor of the constitutionality of legislative acts, is not met here by any reasonable objection. The only, and the evident, object of the statute is to protect the game fishes mentioned during a season allowed for breeding and development and must surely be within the admitted range of the duties of State government.

It should be observed, in connection with the views expressed, that by section 190 of the Code of Civil Procedure our jurisdiction to review is confined to the questions certified. In this case, they demand of the court whether the statute they refer to is in conflict with any provision of the State, or

the Federal, Constitution.   Other questions are not here; which might be suggested as affecting the construction of the statute in its effect upon some exercise of private rights, in one way or another.

I think that the judgment should be reversed and that the questions certified should be answered in the negative.

PARKER, Ch. J., and LANDON, J., concur with O'BRIEN, J., and WERNER, J., concurs on first ground stated in opinion; HAIGHT and MARTIN, JJ., concur with GRAY, J., for reversal.

Judgment affirmed, and questions certified answered in the affirmative.