## VIEMEISTER v. WHITE et al.

(Supreme Court, Appellate Division, Second Department. November 20, 1903.)

1. STATUTES—VALIDITY—DETERMINATION—NATURAL JUSTICE.

   The validity of statutes must be determined solely with reference to constitutional restrictions, and not by natural equity or justice.

2. PUBLIC SCHOOLS—CONSTITUTIONAL GUARANTY—LEGISLATIVE RESTRICTIONS—VACCINATION ACT.

   Const. art. 9, § 1, requiring the Legislature to provide for the maintenance and support of free common schools, wherein all the children of the state may be educated, does not operate to make education a constitutional right, instead of a privilege, and thus prevent the Legislature from imposing any reasonable regulations on the privilege, such as the requirement of vaccination, prescribed by Laws 1893, p. 1556, c. 661, § 200, so long as the regulation operates equally on all persons in the same class and under the same conditions.

3. CONSTITUTIONAL LAW—LEGISLATIVE DISCRETION—INTERFERENCE BY COURT.

   The courts cannot interfere with the exercise of legislative discretion, so long as it does not transcend constitutional limitations.

**4. SAME—LAW OF THE LAND—VACCINATION ACT.**
Laws 1893, p. 1556, c. 661, § 200, requiring vaccination of children as a condition of their attendance on public schools, as it operates equally on all persons within the state, and violates no specific individual guaranty of the Constitution, does not deprive any member of the state of "any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers."

**5. SAME—EQUAL PROTECTION OF LAWS—VACCINATION ACT.**
Laws 1893, p. 1556, c. 661, § 200, requiring vaccination of children as a condition of their attendance on public schools, does not deprive any persons of the equal protection of the law, within Const. U. S. Amend. 14.

**6. PUBLIC SCHOOLS—CONDITIONS OF ATTENDANCE—POLICE POWER.**
Laws 1893, p. 1556, c. 661, § 200, requiring vaccination of children as a condition of their attendance on public schools, is a valid exercise of the police power of the state.

Appeal from Special Term, Kings County.

Application by Edmund C. Viemeister for a peremptory writ of mandamus against Patrick J. White, president of the board of education, and another. From an order denying the writ, relator appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Edmund C. Viemeister (John Leary, on the brief), for appellant.

James McKeen (Walter S. Brewster, on the brief), for respondents.

WOODWARD, J. The relator seeks to compel the respondents, officers of Public School No. 12 in the borough of Queens, to admit his child to such school, admission having been denied because of the fact that the relator's said child had not submitted to vaccination, as required by section 200, c. 661, p. 1556, Laws 1893. The application of the relator for a peremptory writ of mandamus was denied at Special Term, and appeal comes to this court, it being urged that the section above cited is null and void, as being contrary to certain provisions of the Constitution.

The rule is well established by authority that the validity of statutes must be determined solely with reference to constitutional restrictions, and not by natural equity or justice. People v. Buffalo Fish Co., 164 N. Y. 93, 97, 58 N. E. 34, 52 L. R. A. 803, 79 Am. St. Rep. 622, and authority there cited. Our attention is called to various provisions of the state Constitution in an effort to establish a conflict between the statute and the fundamental law. First among the provisions of the Constitution to which our attention is invited is section 1 of article 9, which provides: "The Legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated." It is urged that this operates to make an education a constitutional right, rather than a privilege, as held in Matter of Walters, 84 Hun, 457, 32 N. Y. Supp. 322; but we are of opinion that the Constitution did not intend to change the practice and policy of the state in reference to the schools, but merely to insure a continuance and an extension of the privileges of citizens of this state, and that the Legisla-

¶ 6. See Schools and School Districts, vol. 43, Cent. Dig. § 329.

ture has a right to impose any reasonable regulations upon this privilege which operate equally upon all persons in the same class and under the same conditions. It may be conceded that the Legislature has no constitutional right to compel any person to submit to vaccination; but where the state grants a privilege it has the right to determine the conditions upon which it may be enjoyed; has a right to regulate the privilege in the interests of the fullest enjoyment by all; and, so long as this regulation does not operate to deprive any member of this state of "any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers," there is no ground on which the statute may be declared null and void. The vice against which this constitutional limitation was directed was partial legislation—legislation which operated, not upon the legislators and their immediate constituents, but upon limited numbers of people; and it can hardly be doubted that a provision of a statute which provided that Public School No. 12 of the borough of Queens should not permit the attendance of persons not vaccinated, but which made no regulation for other schools, would not be "the law of the land." It would not be "the law of the land" if it referred to a single county, or to a number of counties, for it would still be open to the objection that it deprived the members of this state who lived in these localities of rights and privileges which were secured to citizens in other portions of the state. When the law operates equally upon all; when the rule of conduct is uniform throughout the state, affecting alike the legislator, his family, his neighbors and friends—the presumption lying at the foundation of representative government is that the Legislature will act wisely, and in the interests of all of the people; and we may fairly look to the Legislature for the repeal or amendment of statutes which, in the course of time and experience, are found to work adversely to the public interests. When, therefore, the fundamental law of the state has limited the Legislature to general laws in so far as they relate to the rights and privileges secured to any citizen of the state, and has fixed certain limits upon encroachments upon individual rights, it leaves the legislative power otherwise untrammeled, and it is not the province of the courts to interfere with the exercise of legislative discretions. If section 200, p. 1556, c. 661, Laws 1893, is not justified, if it is not wise or proper to impose the condition there named, it must be presumed that the Legislature will in the future remedy the wrong. It cannot be done by the courts. In our constitutional system there are three co-ordinate departments —the executive, the legislative, and judicial; and it is improper that any one of these should encroach upon the domain of the other. Therefore, when the validity of an act of the Legislature is brought before us, we are to determine not whether the act is wise, or demanded by considerations of a public nature, but whether it is within the limitations fixed by the people in the fundamental law, and beyond this we are without more power than belongs to any other equal number of citizens of the state.

The act in question is general in its operation. It applies to all persons attending the public schools of this state, and, if it tran-

scends none of the specific individual guaranties, it is "the law of
the land," and as such binding upon every person within the jurisdic-
tion. "By 'the law of the land,'" say the court in Bank of State v.
Cooper, 2 Yerg. 599, 24 Am. Dec. 517, 523, "is meant a general
and public law, operating equally upon every individual in the com-
munity. Such is the opinion of Judge Catron in the case before re-
ferred to, and such was the opinion of Lord Coke upon the construc-
tion of Magna Charta. In his commentary on this instrument (2
Institute, 51) he says that the terms 'law of the land' were used that
the law might extend to all. He informs us that Parliament, by the
act in the eleventh year of Henry VII, violated the principles of
the Great Charter in this particular; and that under the authority
of this act Empson and Dudley committed horrible oppressions and
exactions to the undoing of many people. But that in the first year
of Henry VIII this act was repealed on the avowed ground that it
was a violation of the Charter." Continuing, this same learned court
say:

"This provision was introduced to secure the citizens against the abuse of
power, by the government. Of what benefit is it if it impose no restraint upon
legislation? Was there not as just ground to apprehend danger from the
Legislature as from any other quarter? Legislation is always exercised by
the majority. Majorities have nothing to fear, for the power is in their hands.
They need no written constitution, defining and circumscribing the powers of
the government. Constitutions are only intended to secure the rights of the
minority. They are in danger. The power is against them, and the selfish
passions often lead us to forget the right. Does it not seem conclusive, then,
that this provision was intended to restrain the Legislature from enacting any
law affecting injuriously the rights of any citizen, unless at the same time
the rights of all others in similar circumstances were equally affected by it.
If the law be general in its operation, affecting all alike, the minority are
safe, because the majority, who make the law, are operated on by it equally
with the others. Here is the importance of the provision, and the great
security it affords."

And in Jones v. Perry, 10 Yerg. 59, 30 Am. Dec. 430, the court, in
discussing this same provision say:

"But the language used is of general application, and forbids the enactment
of a partial law by which the rights of any individual shall be abridged or
taken away. Nor is there a single provision in our Constitution more salutary
in its character, or that demands in its enforcement the exercise of greater
vigilance and energy."

See Budd v. State, 3 Humph. 483, 39 Am. Dec. 189; Van Zant v.
Waddel, 2 Yerg. 260, cited approvingly in Cotting v. Kansas City
Stock Yards Co., 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92; Opinion
of the Judges of England, 20th of Henry VI; Opinion of Judges of
England, 2d of Richard III; "An Appeal to the Justice and Interests
of the People of Great Britain, in the Present Dispute with America,
1776, by an Old Member of Parliament," 1, 5, 7, and 8; Richard
Price, D. D., F. R. S., in his "Observations on the Principles of Civil
Liberty, the Principles of Government, and the Justice and Policy of
the War with America," 1776, 29.

Webster, in the Dartmouth College Case, 4 Wheat. 518, 4 L. Ed.
629, says:

"By the 'law of the land' is most clearly intended the general law; a law
which hears before it condemns; which proceeds upon inquiry, and renders

judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society."

We fail to discover that the statute in question violates any specific guaranty. It is not in conflict with any of the definitions of the "law of the land," for it operates equally upon every person who is, or who may desire to become, a pupil in our public schools. It affords the equal protection of the law required by the fourteenth amendment; and, however willing we might be to agree with the appellant that the practice of vaccination is attended with dangers, and that its efficacy is a matter of uncertainty, these are matters which should properly be addressed to the consideration of the legislative department, rather than to the courts. The order appealed from should be affirmed, with costs.

Order affirmed, with $10 costs and disbursements. All concur.

HIRSCHBERG, J. I concur. The provisions of section 200, c. 661, p. 1556, Laws 1893, prohibiting children from attending the public schools without first having been vaccinated, constitute a legitimate exercise of the police power. This is defined by the Court of Appeals in People v. King, 110 N. Y. 418, 423, 18 N. E. 245, 1 L. R. A. 293, 6 Am. St. Rep. 389, as the power by means of which "the Legislature exercises a supervision over matters involving the common weal, and enforces the observance by each individual member of society of the duties which he owes to others and to the community at large. It may be exerted whenever necessary to secure the peace, good order, health, morals, and general welfare of the community, and the propriety of its exercise within constitutional limits is purely a matter of legislative discretion, with which the courts cannot interfere." It has never been questioned that measures which are obviously designed in good faith to guard and protect the public health are within this power. "The Legislature has power to pass laws for the protection of the health and safety of its citizens." Lawson's Rights & Remedies, vol. 7, § 3, p. 913. "Without attempting to define what are the peculiar subjects or limits of this power, it may safely be affirmed that every law for the restraint and punishment of crime, for the preservation of the public peace, health, and morals, must come within this category." Mr. Justice Greer in Thurlow v. Mass., 5 How. 632, 12 L. Ed. 314. "The police power of a state extends to all matters which concern its internal regulation. It embraces those which affect the lives, limbs, health, comfort, and welfare of all in their persons and their property. It subjects both persons and property to those restraints and burdens which are necessary in order that the general comfort and welfare may be secured." Commonwealth v. Bearse, 132 Mass. 542, 546, 42 Am. Rep. 450. "Neither the amendment [the fourteenth], broad and comprehensive as it is, nor any other amendment, was designed to interfere with the power of the state, sometimes termed its 'police power,' to prescribe regulations to promote the health, peace, morals, education, and good order of the people." Barbier v. Connolly, 113 U. S. 29, 31, 5 Sup. Ct. 357, 28 L. Ed. 923. "The police

power," said Judge Peckham in People v. Budd, 117 N. Y. 1, 38, 22 N. E. 670, 682, 5 L. R. A. 559, 15 Am. St. Rep. 460, "it is acknowledged, may be rightfully exercised, among others, in cases involving the public health or the public morals. No one questions it in regard to either of those two important branches of government." No court in this state, so far as I have been able to learn, has ever declared an act unconstitutional which was simply designed to protect the public health. It is only in cases where, under the guise of health regulations, enactments have been passed having other ulterior objects in view, that the courts have declared the acts unconstitutional. These cases in no degree weaken the broad doctrine that the state, in the exercise of its sovereign power may control and restrain the individual citizen by fair and reasonable laws designed to promote the public health, and by which all are treated alike. They only establish, said the court in People v. Ewer, 141 N. Y. 129, 135, 36 N. E. 4, 25 L. R. A. 794, 38 Am. St. Rep. 788, that "the Legislature has no right, under the guise of protecting health or morals, to enact laws which, bearing but remotely, if at all, upon these matters of public concern, deprive the citizen of the right to pursue a lawful occupation." The provision of the act in question in reference to vaccination has no object beyond the maintenance and preservation of the public health, and invades no rights of the citizen. It relates solely to the children attending the public schools, and aims to protect the great mass of the people who have adopted a generally recognized preventive of the spread of smallpox from dangerous and enforced association with the few who refuse to join in the protection. It has long been on our statute books. As originally passed in 1860 (chapter 438, p. 761), it directed boards of education "to exclude from the benefits of the common schools therein any child or any person who has not been vaccinated"; and, as re-enacted by chapter 661, p. 1556, of the Laws of 1893, it expressly provides that "no child or person not vaccinated shall be admitted or received into any of the public schools of the state." Assuming that the state has a right to determine whether or not the practice of vaccination tends to prevent disease, and assuming that the state has a right to determine that the general and intimate association for long periods of unvaccinated persons, and especially of unvaccinated, susceptible children, is a menace to the public health, no reasonable doubt can exist as to the propriety and legality of this exercise of its sovereign power. The legitimacy of its exercise is recognized by text-writers. See Prentice on Police Powers, p. 132; Tiedeman on Limitations of Police Power, § 15, p. 31; and Parker and Worthington on Public Health & Safety, § 123. It is not in conflict with the assumed duty of the state to furnish education. Cooley, in his work on Torts, says (section 287):

"To furnish to its citizens the means of an education is a duty which the state, at its option, will assume or decline; and, when the duty is assumed, the state, in the provision it makes, will go so far as its lawmakers shall think proper, and no further."

This principle was recognized by the Court of Appeals in the case of the People ex rel. King v. Gallagher, 93 N. Y. 438, 45 Am. Rep.

232, and Chief Judge Ruger, referring to a well-known case then recently decided by the federal court, said (page 447):

"It would seem to be a plain deduction from the rule in that case that the privilege of receiving an education at the expense of the state, being created and conferred solely by the laws of the state, and always subject to its discretionary regulation, might be granted or refused to any individual or class at the pleasure of the state. This view of the question is also taken in State ex rel. Garnes v. McCann, 21 Ohio St. 210, and Cory v. Carter, 48 Ind. 337, 17 Am. Rep. 738."

It is unnecessary to go as far as Judge Ruger did. It is sufficient that on principle and authority the duty to educate is not so far absolute as to exclude the right to enforce reasonable prohibitory regulations.

In many of the states vaccination laws in relation to school children have been held to be constitutional, and within the legitimate exercise of the police power, provided they are enforced only when an epidemic of smallpox threatens the community; but in many other states besides our own it has been expressly held that, independently of any specific menace of disease, a regulation excluding unvaccinated children from the public schools is reasonable, valid, and constitutional. Among the latter cases may be cited Abeel v. Clark, 84 Cal. 226, 24 Pac. 383; Duffield v. Williamsport School District, 162 Pa. 476, 29 Atl. 742, 25 L. R. A. 152; Field v. Robinson, 198 Pa. 638, 48 Atl. 873; Bissell v. Davison, 65 Conn. 183, 32 Atl. 348, 29 L. R. A. 251; Blue v. Beach, 155 Ind. 121, 56 N. E. 89, 50 L. R. A. 64, 80 Am. St. Rep. 195; and Matter of Rebenack, 62 Mo. App. 8. In some of these jurisdictions there existed at the time of the respective decisions a constitutional guaranty of education similar in character to that embraced in our present fundamental law. Thus, in Indiana, by article 8, § 1, the Constitution provided in substance that tuition should be free, and the schools open to all; in California, by article 9, § 5, of the Constitution, it is provided that "the Legislature shall provide for a system of common schools, by which a free school shall be kept up and supported in each district at least six months in every year, after the first year in which a school has been established"; and by article 10, § 1, of the Constitution of Pennsylvania, the Legislature is required to maintain a "system of public schools, wherein all the children of this commonwealth, above the age of six years, may be educated." Nevertheless the vaccination law was upheld by the court of last resort in each of the three states referred to in the cases supra, respectively, of Blue v. Beach, Abeel v. Clark, and Duffield v. Williamsport School District.

For the reasons herein expressed, and those contained in the opinion of WOODWARD, J., I vote for an affirmance of the order.