## Court of Appeals.

### January, 1894.

### PEOPLE v. CHARLOTTE EWER.

IN THE MATTER OF THE PETITION OF CHARLOTTE EWER
FOR WRITS OF HABEAS CORPUS AND CERTIORARI, ETC.

(56 St. Rep. 667; 141 N. Y. 129.)

1. CRIMINAL LAW—EXHIBITIONS.
    The inalienable right of a child of immature years to pursue a trade
    is limited to such as the state, as parens patriae, recognizes as proper
    and safe.
2. SAME.
    The provision of section 292 of the Penal Code applies to all exhibi
    tions or shows.
3. SAME.
    Such provision is not violative of any right secured by the Consti-
    tution, but is within the police power of the legislature.

Appeal from order of the general term of the supreme court
in the first judicial department, made July 3, 1893, which af-
firmed an order of special term overruling demurrers of the
relator to returns to writs of habeas corpus and certiorari, dis-
missing said writs and remanding her to custody.

Charlotte Ewer was arrested, upon a police magistrate's war-
rant, charged with a misdemeanor, in violation of section 292
of the Penal Code, by exhibiting her child, Mildred Ewer, as a

dancer at the Broadway theatre in New York city. The examination before the magistrate sustained the charge and showed that she was of the age of seven years and went by the stage name of " La Regaloncita; " that she was clad in the usual style of the ballet dancer, in a low-necked, sleeveless and short dress, and wore purple tights; that she danced upon the stage to the music of an orchestra, elevating her legs, moving upon her toes, and posturing with her figure. Her mother, being held upon the charge, sued out writs of habeas corpus and certiorari, to which the magistrate made return of his proceedings, etc. The prisoner demurred to the return; alleging that there were no sufficient grounds for holding her and that the statute under which she was arrested was unconstitutional.

The provisions of the Code, under which this arrest was made, read that " a person who  *  *  *  exhibits  *  *  * a female child apparently or actually under the age of fourteen years,  *  *  *  or who, having the care, etc., of such a child, as parent, etc.,  *  *  *  in any way consents to the employment or exhibition of such a child either as  *  *  * a dancer,  *  *  *  or in a theatrical exhibition  *  *  * or in any  *  *  *  exhibition dangerous or injurious to the life, limb, health or morals of the child  *  *  *  is guilty of a misdemeanor." At the special term, the writs were dismissed and the prisoner was remanded. The order of that court was affirmed at the general term and the defendant has appealed to this court.

A. J. Dittenhoefer, for appellant.

Elbridge T. Gerry, for respondent.

GRAY, J.—The question we shall determine upon this appeal is, whether the statute under which the appellant was arrested violates any just and personal rights secured to her by the constitution of the state. If it is such an interference with the legal relation of parent and child as exceeds the limits within which the legislature, exercising the sovereign power of

the state, may regulate and control that relation, then it is the duty of the courts to declare its unconstitutionality. But if it is within a proper and legitimate exercise of legislative functions, the courts may not interfere. This question falls within those which are classified under the head of the police power of the state. The extent of the exercise of that power, with which the legislature is invested and which it has so freely exerted in many directions, within constitutional limits, is a matter resting in discretion; to be guided by the wisdom of the people's representatives. It is difficult, if not impossible, to define the police power of a state; or, under recent judicial decisions, to say where the constitutional boundaries limiting its exercise are to be fixed. It is a power essential to be conceded to the state, in the interest and for the welfare of its citizens. We may say of it that when its operation is in the direction of so regulating a use of private property, or of so restraining personal action, as manifestly to secure, or to tend to the comfort, prosperity or protection of the community, no constitutional guaranty is violated, and the legislative authority is not transcended. But the legislation must have some relation to these ends; for, to quote the expressions of Mr. Justice Field in the Slaughter House cases, 16 Wallace, 36, "under the mere guise of police regulations, personal rights and private property cannot be arbitrarily invaded." In People v. King, 110 N. Y. 418; 18 St. Rep. 353, it was well observed by Judge Andrews: "By means of this power, the legislature exercises a supervision over matters affecting the common weal. * * * It may be exerted whenever necessary to secure the peace, good order, health, morals and general welfare of the community, and the propriety of its exercise, within constitutional limits, is purely a matter of legislative discretion, with which courts cannot interfere." The assumption of the exercise of this extraordinary and very necessary power has been the subject of severe criticism in the opinions of judges, when it has been sought thereby to regulate and control in the interest of the public the conduct of corporate or individual business transactions. Munn v. State of Illinois, 94 U. S. 113,

may be referred to as starting a current of authority in this country.    But no such criticism can find just grounds for caviling at legislation, whose ends clearly tend to promote the health or moral well-being of the members of society.    To that class of legislation this statute belongs.    By preventing the exhibition of children of tender and immature age upon the theatrical, or other public, stage, the legislature is exercising that right of supervision and control over the child, which, in every civilized state, inheres in the government, and which nothing in the legal relations of parent and child should be deemed to forbid.    The proposition is indisputable that the custody of the child by the parent is within legislative regulation.    The parent, by natural law, is entitled to the custody and care of the child, and, as its natural guardian, is held to the performance of certain duties.    To society, organized as a state, it is a matter of paramount interest that the child shall be cared for, and that the duties of support and education be performed by the parent or guardian ; in order that the child shall become a healthful and useful member of the community. It has been well remarked that the better organized and trained the race, the better it is prepared for holding its own.    Hence it is that laws are enacted looking to the compulsory education by parents of their children, and to their punishment for cruel treatment; and which limit and regulate the employment of children in the factory and the workshop, to prevent injury from excessive labor.    It is not, and cannot be, disputed that the interest which the state has in the physical, moral and intellectual well being of its members, warrants the implication, and the exercise, of every just power which will result in preparing the child, in future life, to support itself, to serve the state, and in all the relations and duties of adult life to perform well and capably its part.

In the brief of the able counsel, who appears for the People, and whose earnest efforts in behalf of the cause of humanity and of mercy have so distinguished him, that discussion of the subject upon these lines is quite full and interesting.    Indeed the learned counsel for the appellant does not, in the main,

contest the right and the duty of the state to protect and to promote by adequate legislation the health and morals of its citizens; but bases his arguments here upon the proposition, substantially, that the legislature cannot take from parents the rights to employ their children in any lawful occupation, not indecent or immoral, or dangerous to life, limb, health or morals. That proposition may be readily conceded. It is true enough that if the court could say that this legislation was an arbitrary exercise of the legislative power, depriving the parent of a right to a legitimate use of his child's services; that, while ostensibly for the promotion of the well being of the children, in reality it strikes at an inalienable right, or at the personal liberty of the citizen, and but remotely concerned the interests of the community, it would be its duty to so pronounce and to declare its invalidity. But this legislation has no such destructive tendency or effect. It does not deprive the parent of the child's custody, nor does it abridge any just rights. It interferes to prevent the public exhibition of children, under a certain age, in spectacles, or performances; which, by reason of the place or hour, or the nature of the acts demanded of the child performer, and of the surroundings and circumstances of the exhibition, are deemed by the legislature prejudicial to the physical, mental or moral well being of the child, and, hence, to the interests of the state itself. Take the facts of this case, and they seem sufficiently to warrant the interference of the law. It is not necessary to reason upon them. The scanty dress of the ballot dancer, the pirouetting and the various other described movements with the limbs and the vocal efforts cannot be said to be without possible prejudice to the physicial condition of the child; while in the glare of the footlights, the tinsel surroundings, and the incense of popular applause, it is not impossible that the immature mind should contract such unreal views of existence, as to unfit it for the stern realities and exactions of later life. The statute is not to be construed as applying only when the exhibition offends against morals or decency; or endangers life or limb by what is required of the child actor. Its application is to all public exhibitions or shows. That any

and all such be deemed prejudicial to the interests of the child, and contrary to the policy of the state to permit, was for the legislature to consider and say.

The right to personal liberty is not infringed upon, because the laws imposes limitations or restraints upon the exercise of the faculties with which the child may be more or less exceptionally endowed. The inalienable right of the child, or adult, to pursue a trade is indisputable; but it must be not only one which is lawful, but which, as to the child of immature years, the state, or sovereign, as parens patriæ, recognizes as proper and safe. It is not the strict moralist's view, dictated by prejudice, but the view from the standpoint of a member of the body politic, which ranges the judgment in support of legislative interference to restrain the parent from permitting an employment of the child, under circumstances deemed unsuited to its proper mental, moral or physicial development. In the judgment of the legislature, it was deemed as unsuitable for the youth of the community, under a certain age, to dance or perform in public exhibitions, in the ways mentioned, as it was deemed unsuitable for them to work in the factory, except under certain limitations as to age, hours, etc.

We have not overlooked certain cases, referred to by the appellant's counsel, to show the invalidity of this legislation as an exercise of the police power of the state; or to show a violation of constitutional rights. They establish that the legislature has no right, under the guise of protecting health or morals, to enact laws which, bearing but remotely, if at all, upon these matters of public concern, deprive the citizen of the right to pursue a lawful occupation. Such were the Matter of Jacobs, 98 N. Y., 98; People v. Marx, 99 id., 377; People v. Gilson, 109 id., 389; 16 St. Rep., 185; People v. Rosenberg, 138 N. Y., 410; 53 St. Rep., 1.

We are referred to some cases in Illinois; but they are neither applicable nor authoritative upon the question before us.

Further discussion is unnecessary. We might have remained satisfied with the able and clear exposition of his views by the learned justice at the special term, had not the range taken by

the arguments of counsel seemed to call for a brief expression by us of our view of the principle of state interference.

The order should be affirmed.

All concur.

Order affirmed.