(43 Misc. Rep. 266.)

### CITY OF NEW YORK v. CHELSEA JUTE MILLS.

(Municipal Court of City of New York, Borough of Manhattan, Fourth District. March, 1904.)

1. CONSTITUTIONAL LAW—POLICE POWER—CHILD LABOR.

Laws 1903, p. 1065, c. 459, § 4, amending Laws 1894, c. 556, tit. 16, § .5 (added by chapter 671, p. 1684, Laws 1894), making it unlawful to employ a child under 14 years of age during the term of the public schools of the district in which the child resides, is a valid exercise of the police power.

2. STATUTES—AMENDMENT.

Laws 1903, p. 1065, c. 459, § 4, making it unlawful to employ a child under 14 years of age during the school term, is germane to the consolidated school law (Laws 1894, c. 556), and a proper amendment thereto.

3. CHILD LABOR—LIABILITY OF EMPLOYER.

Laws 1903, p. 1065, c. 459, § 4, relating to the employment of a child under 14 years during school term, forbids such employment, and one employing such child cannot set up as a defense that he acted in good faith on her statements and an affidavit of her father.

Action by the City of New York against the Chelsea Jute Mills to recover statutory penalty. Judgment for plaintiff.

John J. Delany, Corp. Counsel (John C. Breckinridge, of counsel), for plaintiff.

George W. Alger, on behalf of child labor committee, by permission of court.

Carter, Ledyard & Milburn (George D. Pratt, of counsel), for defendant.

ROESCH, J. This is an action to recover a statutory penalty. As it is a test case, upon the outcome of which many others depend, and is the first of its kind in this state, a full examination of the questions involved will be attempted.

It is within the jurisdiction of the court under section 1, subd. 7, and section 25, subd. 4, of the municipal court act (Laws 1902, pp. 1488, 1497, c. 580). It is brought pursuant to the provisions of the consolidated school law, section 5, tit. 16, c. 556 (added by chapter 671, p. 1684, Laws 1894) Laws 1894, amended by section 4, c. 459, p. 1065, Laws 1903, which went into effect on May 7, 1903. The language of the statute follows:

"It shall be unlawful for any person, firm or corporation to employ any child under fourteen years of age, in any business or service whatever, during any part of the term during which the public schools of the district in which the child resides are in session; * * * and any person who shall employ any child contrary to the provisions of this section * * * shall, for each offense, forfeit and pay to the treasurer of the city or village, or to the supervisor of the town in which such child resides, a penalty of fifty dollars."

The act prescribes a comprehensive system of public education, and other sections provide for instruction elsewhere, if desired, than at a public school. The salient facts are not disputed. Annie Ventre resides with her parents in this city, borough of Brooklyn, in which the defendant, a domestic corporation organized under the laws of our state, transacts its business of manufacturing and selling seamless

jute bags and other jute fabrics. She was but 12 years of age on July 29, 1903. She began to work in the factory of the defendant on April 7, 1903, and continued until the day preceding the trial. She worked at emptying "bobbins," beginning her labors at 7 o'clock a. m., and stopping at 6:15 o'clock p. m., with an intermission from noon until 12:45 o'clock for lunch, except that on Saturdays, with the same hours otherwise, she ceased work at 2:15 o'clock p. m. When she applied for work on April 7, 1903, she stated she was "sixteen passed," and gave the forelady an affidavit, signed and sworn to by her father on April 6, 1903, before a commissioner of deeds, to the effect that she was born "on April 4, 1887, and that she was sixteen years old on April 4, 1903." The father testified that the affidavit was not in fact true, but that July 29, 1903, was her twelfth birthday. The mother testified positively that her daughter was 12 years old on July 29, 1903. There was no objection to this testimony as to age. It is admitted of record that the terms of the public schools are uniform throughout the city, and that these were in session during the period the child worked as stated.

The statute is assailed for unconstitutionality. No particular provision of the state or federal Constitution is assigned. It is claimed to be "an unwarranted, illegal, and unconstitutional deprivation of the liberties of the defendant." The defendant also urges immunity from the penalty on account of the alleged "good faith, absence of intent to violate the statute, nonemployment of Annie Ventre since her age was established in court." The integrity of the statute is upheld under the police power of the state. A statute should not be declared unconstitutional unless required by the most cogent reasons, or compelled by unanswerable grounds. People v. Budd, 117 N. Y. 13, 22 N. E. 670, 682, 5 L. R. A. 559, 15 Am. St. Rep. 460; People ex rel. Kemmler v. Durston, 119 N. Y. 577, 24 N. E. 6, 7 L. R. A. 715, 16 Am. St. Rep. 859; People v. Rosenberg, 138 N. Y. 410, 34 N. E. 285; Matter of Stilwell, 139 N. Y. 341, 34 N. E. 777; People ex rel. Nuhamcus v. Warden, 144 N. Y. 529, 39 N. E. 686, 27 L. R. A. 718. Every presumption is in favor of the constitutionality of a statute. Fort v. Cummings, 90 Hun, 481, 36 N. Y. Supp. 36. It is difficult to satisfactorily define the police power to cover every case. But it includes such legislative measures as promote the health, safety, or morals of the community. 1 Tiedeman State & Fed. Control, § 1; Thayer's Cases on Const. Law, pt. 2, p. 693; Guthrie's Fourteenth Amendment, p. 76; Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385. It is true that the Legislature must respect freedom of contract, and the right to live and work where and how one will. People v. Gillson, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. Rep. 465. Yet the weal of the people is the supreme law. The Legislature may not disregard it; private interests are subordinated to the public good, and even a statute opposed to natural justice and equity, requiring vigilance or causing vexation or annoyance, will be upheld if within constitutional limitations. People v. Lochner, 177 N. Y. 145, 69 N. E. 373; People v. Havnor, 149 N. Y. 195, 43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707; Bertholf v. O'Reilly, 74 N. Y. 509, 30 Am. Rep. 323; State v. Noyes, 47 Me. 189. Much more potent, if possible, is a statute seeking the protection

of children.   They are the wards of the state, which is particularly interested in their well-being as future members of the body politic, and has an inherent right to protect itself and them against the baneful effects of ignorance, infirmity, or danger to life and limb.   People v. Ewer, 141 N. Y. 129, 36 N. E. 4, 25 L. R. A. 794, 38 Am. St. Rep. 788. Legislation is replete with enactments of such a character.   We have a most enlightened Code for the prevention of cruelty to children.   The Penal Code (section 288) requires that a minor child shall be furnished with "medical attendance."   In People v. Pierson, 176 N. Y. 201, 68 N. E. 243, 63 L. R. A. 187, it was held that the medical attendance required is the authorized medical attendance of a duly licensed practitioner, and not that of representatives of irregular therapeutics, as Christian Scientists and the like.   In People v. Ewer, 141 N. Y. 129, 36 N. E. 4, 25 L. R. A. 794, 38 Am. St. Rep. 788, a statute was held to be within the police power which prohibited the appearance of a child under 14 years of age in public on any stage.   It was declared that the Legislature had the right and power to exercise its judgment as to what would be detrimental to the best. interests of the children of the state, and, having done so, such judgment should not be impeached by the court, and that "it cannot be disputed that the interest which the state has in the physical, moral, and intellectual well-being of its members warrants the implication and the exercise of every just power which will result in preparing the child in future life to support itself, to serve the state, and in all relations and duties of adult life to perform well and capably its part."   So statutes have been passed providing for compulsory vaccination of children, and have been upheld as within the police power.   1 Tiedeman, State & Fed. Control, § 17.   Again, the factory legislation of our state, from that of May 18, 1886, to chapter 173, p. 298, Laws 1893, aimed at the protection of children.   We were in accord therein with advanced steps in similar legislation throughout the civilized world.   In Fitzgerald v. Alma Furniture Company, 131 N. C. 636, 42 S. E. 946, there will be found an historical summary of such acts in our own and foreign countries, from which it will appear that every civilized state has passed such enactments.   The Court of Appeals showed in a striking manner its purpose to maintain such legislation in deciding that a corporation which violates the statute is practically an insurer of the safety of the child, and a child who is injured, irrespective of any negligence on the part of the corporation, is not, as matter of law, chargeable with contributory negligence, or with having assumed the risks of employment.   The employment itself is sufficient evidence of the employer's negligence in such case, as the employment is itself a civil wrong.   Marino v. Lehmaier, 173 N. Y. 530, 66 N. E. 572, 61 L. R. A. 811; Gallenkamp v. Garvin Machine Co., 86 N. Y. Supp. 378.   The test of such legislation is to determine whether on its face it serves a public purpose, reaches all persons of a reasonably ascertained class indiscriminately, and is cognate to the objects it proposes to subserve.   Unless these questions are negatived, the court must declare the act constitutional.   People v. Lochner, 177 N. Y. 145, 69 N. E. 373.   In the latter case the court held an act restricting the hours of labor in bakeries a valid exercise of the police power, in view of the unwholesome character of the work.   The statute under consid-

eration does not discriminate, is auxiliary to the primary purpose to enforce education and elevate future citizenship, is not arbitrary, puts no unnecessary restriction upon freedom of action, and resorts to no unnecessary rigor, because it would be impossible, otherwise than by an absolute prohibition of employment of all children under 14 years of age, to accomplish its beneficent ends. Nor does it constitute any improper infringement of any right a parent may have in a child or to its labor, or a child may have to labor. People v. Ewer, 141 N. Y. 129, 36 N. E. 4, 25 L. R. A. 794, 38 Am. St. Rep. 788. Nor is the court, in its efforts to test the validity of an act, confined to the statute itself, its general scope and trend, or literal provisions. The court may resort to facts and circumstances of which it can take judicial notice, and evidence may even be introduced to enlighten the judicial mind. Tenement-House Department v. Moeschen, 89 App. Div. 526, 85 N. Y. Supp. 704; Harvard Law Review, Feb., 1904. So, in People v. Lochner, 177 N. Y. 145, 69 N. E. 373, Judge Vann strengthens judicial knowledge with elaborate quotations from scientific literature, and maintains the judicial right to "resort to such sources of information as were open to the Legislature." There is no dearth of medical testimony to the evils of child labor. Many medical authorities could be quoted. But the Legislature had in its own archives ample testimony in the premises. Governors Hill, Black, and Odell had, in annual messages, explained the situation and earnestly urged legislation. The annual reports of the factory inspectors called attention in strong terms to the evils of child labor, and the necessity of compulsory education. In fact, the Legislature merely heeded the recommendations of an able committee of its own body, known as the "Reinhard Committee," of which Hon. Julius M. Mayer was counsel. The committee was specially charged with the investigation of existing conditions. Its report is a powerful document. An extract from it will suffice to show its general import, and disclose the origin and reason of the law in question:

· "The committee stamps the employment of child labor under the statutory age as one of the most extensive evils now existing in the city of New York, and an evil which is a constant and grave menace to the welfare of its people. * * * These children were undersized, poorly clad, and dolefully ignorant, unacquainted with the simplest rudiments of a common school education, having no knowledge of the simplest figures, and unable in many cases to write their own names in the native or any other language. Parents and corrupt notaries alike connive at the employment of children under the statutory age. * * * No child under the age should be permitted to work in any manufacturing establishment without a health certificate. * * * The legislation, however, must be collaterally supported by a vigilant carrying out of the compulsory education law." Report, pp. 5-9, 25-30, 172, 173, 291-293, 657.

Congress has likewise taken up the subject. Similar recommendations will be found in the Report of the Industrial Commission of 1900 (vol. 5). In the light of such overpowering evidence the Legislature might, indeed, have been charged with criminal neglect of the welfare of the people, had it failed to act as it did.

It is further objected that the section under consideration is foreign to the scope of the school law, in no way aids the school authorities in their work, and has no legitimate place in that statute. The

objection is not tenable.  The provisions of the child labor law (Laws 1897, p. 477, c. 415, § 70) must be read in connection with the section in question, which is complementary to and a necessary concomitant of the former.  They but emphasize the intent of the Legislature to prohibit the labor and enforce the education of children under the stated age.  In no other way could its salutary purpose have been more effectually encompassed.  It is directly germane to the chief end of the school law, which is a general law, and not a private or local statute that might fall within article 3, § 16, of the state Constitution, confining such a bill to but one subject, which must be expressed in the title.  The strong language of Chief Judge Parker in People v. Lochner, 177 N. Y. 163, 69 N. E. 380, may well be applied here:

"Does the label or the body of the statute prevail?  Does calling a statute names deprive it of its intended and real character?  If a statute relating principally to banking happens, in the course of codification, to be incorporated as an article in the general corporation law, does it cease to operate on the banking business?  I submit without argument that the questions answer themselves."

So here the section is not invalidated merely because embodied in the school law.  The Legislature thus reaffirmed its mandate against child labor to foster education, upon the benign theory that representative government can be safe only when future suffrage is enlightened by education.  Legislation providing for compulsory education of children has been specifically held valid in other states under the general police power.  2 Tiedeman, State & Fed. Control, § 197; State v. Bailey, 157 Ind. 324, 61 N. E. 730, 59 L. R. A. 435; Quigley v. State, 5 Ohio Civ. Ct. R. 638; State v. Clottu, 33 Ind. 409; Bennet v. Bennet, 13 N. J. Eq. 114; Commonwealth v. Roberts, 159 Mass. 372, 34 N. E. 402; Bissell v. Davison, 65 Conn. 183, 32 Atl. 348, 29 L. R. A. 251; State v. McCaffrey, 69 Vt. 85, 37 Atl. 234.  From the foregoing the conclusion is irresistible that the section assailed is a just and valid exercise of the police power of the state.

Nor may the defendant assert exemption from liability on account of "good faith, want of intent to violate the statute, and nonemployment of the child since the trial."  Assuredly the last ground is not seriously urged.  If it were countenanced, the extent and duration of violations of the statute would only be measured by a defendant's successful appeal to the "law's delay."  Nor is the good faith of defendant or absence of intent an excuse.  The defendant was not active in its quest after the age of the child.  It was passive.  It complacently received the affidavit of the father upon that point.  The forelady testified that she made no other inquiries, but rested entirely upon the affidavit and the statement of the girl that she was "sixteen passed."  She was in court.  To the most casual observer the very appearance of the child refuted her statement.  When she made it she was but 11 years and 9 months old, and her daily toil dragged through 10½ hours.  She showed the effects in her maldevelopment and stunted growth.  She was a living picture of the results of child labor in a factory at a delicate age, when womanhood and manhood are in a stage of development.  Impelled solely by principles conserv-

ative of the supreme welfare, the law should be upheld, thus making it impossible to enfeeble and deteriorate the future citizenship of the state. The school law makes no mention of any certificate or affidavit as to age. Nor does the child labor law as to children under 14. But the child labor law does permit the employment of children between 14 and 16 years of age, if a certificate executed by a health officer is filed in the office of the employer. The affidavit in question would not even have answered the requirements of the labor law. The case cited, Mayor v. Bigelow, 13 Misc. Rep. 42, 34 N. Y. Supp. 92, has no application. The defendant was a reputable physician who had neglected to file his license properly. The statute itself gave him leave to rectify his error, and after he had done so the court very properly refused to inflict the penalty. The present statute is absolute. It must necessarily be so to accomplish its object. The employer acts at his peril. The fact of employment makes him liable. The contention of the defendant would require judicial legislation and render the statute nugatory, for good faith could easily be alleged and seldom disproved. It would, furthermore, put a premium on perjury to obtain employment. The decisions are adverse to the position of the defendant. So in abduction cases, the accused determines at his peril whether or not the female is or is not over the statutory age. People v. Stott, 4 N. Y. Cr. R. 306, affirmed, 5 N. Y. Cr. R. 61; State v. Ruhl, 8 Iowa, 447; State v. Johnson, 115 Mo. 480, 22 S. W. 463; Regina v. Prince, 13 Cox, C. C. 138. Where a statute provides a penalty for the doing of an act not in itself criminal, it is not necessary for the penalty to be incurred that the act be done willfully and maliciously. Sell v. Ernsberger, 8 Ohio Cir. Ct. R. 499. The point is very strongly illustrated in the cases prohibiting the sale of liquors to minors, where it is held that the fact that the seller supposed the minor was over the age, and had even been so informed by his father, did not relieve him from the penalty. People v. Werner, 174 N. Y. 132, 66 N. E. 667. The rule is well established that, unless a statute makes knowledge and intent elements of its violation, neither the want of knowledge nor the absence of intent can be shown as a defense. People v. Schaeffer, 41 Hun, 25; People v. Mahaney, 41 N. Y. 28; People v. Nobles, 1 N. Y. Cr. R. 459; Bulena v. Newman, 10 Misc. Rep. 460, 31 N. Y. Supp. 449. See note on subject, 30 Am. Rep. 617–620. As is pointedly said in People v. Kibler, 106 N. Y. 321, 12 N. E. 795:

"Experience has taught the lesson that repressive measures which depend for their efficiency upon proof of the dealer's knowledge and of his intent to deceive and defraud are of little use and rarely accomplish their purpose."

The Legislature must be presumed to have had such lessons in mind, and to have deliberately passed an act that would not nullify itself. If this law be declared invalid, the door will be thrown wide open to the most noxious kinds of child labor.

Upon the whole case, then, there must be judgment for the plaintiff against the defendant for the penalty of $50, together with the costs and disbursements of this action.

Judgment for plaintiff for the penalty of $50, together with costs and disbursements.