OPINION OF THE COURT
Edward J. Greenfield, J.
In 1978, as it has every spring for as long as one can remember, "The Greatest Show on Earth”, Ringling Bros.Barnum & Bailey Circus, came to town. Although child performers had always appeared as an integral part of the circus during its engagements in New York City, in 1978, the activities and exploits of "that daring young man on the flying trapeze”, and nine other performers under the age of 16, resulted in the commencement by the Society for the Prevention of Cruelty to Children of legal proceedings in the Family Court charging the circus and the parents and guardians of the 10 children who had been performing as gymnasts, trapeze artists, horse and elephant riders, acrobats and unicycle riders, with abuse, neglect and misdemeanors for alleged violations of sections 3229 and 3231-a of the Education Law.
As a result of the threatened action by the Society for the Prevention of Cruelty to Children (SPCC), plaintiffs, the parents and guardians of the 10 child performers and the circus, commenced this action in the Supreme Court for declaratory and injunctive relief. Specifically, plaintiffs seek a declaration that the children involved are not prohibited by law from performing in the circus, or in the alternative, that sections 3229 and 3231-a of the Education Law are unconstitutional, and for an injunction enjoining the city, the State and the SPCC from proceeding against them. After oral argument of the motion for a preliminary injunction, and upon the consent of counsel for the municipal defendants, the court directed a stay of any such proceedings, so that the children could perform during 1978 while the circus was at Madison Square Garden.
Although pursuant to section 3232 of the Education Law, the Family Court has exclusive jurisdiction to determine charges of alleged violations of sections 3229 and 3231-a, the Supreme Court has the power to grant an injunction to prevent inequities and threatened irreparable injury and also has the power to grant declaratory relief where, as here, plaintiffs risk violating the law and subjecting themselves to criminal penalties if they permit the children to perform and *600 face economic loss and a change in the life of circus families if they prohibit such performances.
It is plaintiffs’ position that if the statutes are construed to prohibit the performances at issue, their enforcement against plaintiffs constitutes an improper exercise of the police power and a violation of due process and the First Amendment. Plaintiffs further contend that to the extent section 3229 gives the SPCC a veto power over issuance of child performer permits, there is an unconstitutional delegation of governmental power to the SPCC.
Sections 3229 and 3231-a, which govern performances by children under 16, make certain types of activity absolutely unlawful and other types unlawful unless a child performer permit is issued by the Mayor, where the performance is in New York City, or by educational authorities where the performance is elsewhere. Section 3229 makes it unlawful to employ or permit the use or exhibition of a child without a permit in the following types of performances: singing, dancing, playing a musical instrument, acting or appearing in a pageant on stage, film, radio or television. Specifically exempted are performances in churches, schools, and private homes. Former section 3231-a, headed "Unlawful exhibitions”, enumerated those activities by children under 16 which were unlawful under all circumstances. In this category was included engaging or acting:
"a. As a rope or wire walker, gymnast, wrestler, boxer, contortionist, rider upon a horse or other animal (except in a nonprofessional horse show), or as an acrobat; or upon any bicycle or other mechanical vehicle or contrivance; or,
"b. In begging or receiving or soliciting alms in any manner or under any pretense, or in any medicant occupation; or in gathering or picking rags, or collecting cigar stumps; or collecting bones or refuse from markets or streets; or in peddling; or,
"c. In any illegal, indecent, or immoral exhibition or practice; or in the exhibition of any such child when insane, idiotic, or when presenting the appearance of any deformity or unnatural physical formation or development; or,
"d. In any practice or exhibition or place dangerous or injurious to the life, limb, health or morals of such child.”
Prior to 1978, it appears that the Mayor’s office had routinely issued permits for children to perform in the circus as *601 acrobats, gymnasts, etc.; however, in 1978, for the first time, the Mayor’s office refused to issue the permits. Whatever the prior practice may have been, counsel in the office of the Mayor was clearly correct in concluding that no permits could be issued for children authorizing them to perform in the circus as acrobats, gymnasts, animal riders or unicycle riders, since under section 3231-a, such activities are absolutely forbidden.
The statute in question had its genesis in chapter 122 of the Laws of 1876 which made any person having care, custody or control of any child under the age of 16 who permitted a list of prohibited acts guilty of a misdemeanor with all fines and penalties inuring to benefit the incorporated society for the prevention of cruelty to children which prosecuted the offense. The act prohibited singing, playing musical instruments, dancing, rope walking, begging, peddling, or acting as a gymnast, contortionist, or rider, or in any obscene or indecent exhibition, or in any activity threatening to the health and safety of the child. The only exceptions to the prohibited activities were the appearance of child singers or musicians in church or school; or employment of a child as a musician at a concert or entertainment with the consent of the Mayor or other authority where the entertainment would take place. The statute was codified as section 292 of the Penal Code of 1882.
The prohibitions became section 485 of the Penal Law of 1909, and in 1947 were transported to the Education Law (L 1947, ch 815, § 1). The statute was divided into one section which dealt with cities having a population of more than one million (Education Law, § 3216-c, added by L 1965, ch 1031, § 37), and those of less than one million (Education Law, § 3229, previously § 3216-a, added by L 1947, ch 815, § 1, amd and renum by L 1949, ch 687, § 47, renum by L 1966, ch 975, § 12). In cities of over one million, the Mayor of the city could permit a child’s performances in singing, dancing, playing a musical instrument, or appearing in a pageant, theatrical performance, motion picture films or radio or television broadcast upon consent of the parent and upon notice to the Society for the Prevention of Cruelty to Children. In cities of less than one million, the consent of the local board of education was required, upon notice to the local child protective organization. These separate sections were recombined in section 3229 of the Education Law (L 1971, ch 1017, § 9), which permitted all nonprofessional singing, dancing and performing activities *602 by children, and professional appearances upon the obtaining of a child performer permit. Notice of the application for the permit was to be filed with the Society for the Prevention of Cruelty to Children, and for the first time it was provided that society not only had to be afforded a hearing, but that no permit could be issued without the consent of that organization.
Under the 1971 amendment, the totally prohibited activities for children were placed in section 3231-a of the Education Law, which absolutely forbade not only begging, rag picking, peddling, and collecting bones, refuse or cigar stumps, but also immoral exhibitions, exhibition of deformities, practices injurious to the life, limb, health or morals of a child, and explicitly enumerated activities "[a]s a rope or wire walker, gymnast, wrestler, boxer, contortionist, rider upon a horse or other animal (except in a nonprofessional horse show), or as an acrobat; or upon any bicycle or other mechanical vehicle or contrivance”. These latter categories expressly forbade child participation in any circus activities other than the pageants and are the focus of this controversy.
The children involved, who perform as part of family acts, are trapeze artists, horse riders and elephant riders. They have been performing with their parents since early childhood, reportedly without mishap. Several of them are members of families that have five generations of circus tradition behind them.
While the circus has urged upon the court a construction of the statute which would permit the appearance of these juvenile circus performers, it is clear that the statute as written was unambiguous in its proscription and could not be construed to cover only those activities which are dangerous to life, limb, health or morals. Thus, in People v Ewer (141 NY 129, 134), the Court of Appeals held the predecessor statute applied to all exhibitions enumerated in the statute, including a child ballet dancer, and not only those endangering health, safety, morality and decency (even though it took a dim view), which undoubtedly would not be prevalent today as to "[t]he scanty dress of the ballet dancer * * * the glare of the footlights, the tinsel surroundings, and the incense of popular applause”. (See, also, People v Meade, 24 Abb NC 357 —appearance in a theatrical production; People ex rel. Sanders v Grant, 70 Hun 233, and Matter of Stevens, 70 Hun 243 —singing and dancing; Ray v Keene, 19 App Div 147 — child *603 jockey; People v Malone, 63 App Div 117 — child begging; Matter of Children’s Aid & Soc. for Prevention of Cruelty to Children v Schwab, 132 Misc 283 — theatrical performance by child; Balser v Gammel, 257 App Div 85 — unlicensed dance performance.)
As the statute constitutes an absolute prohibition against the activities of these young performers, the court must address itself to the constitutional arguments raised by plaintiffs. However, before dealing with this issue, it must be pointed out that during the pendency of this action, the Legislature enacted and the Governor, on May 9, 1978, signed into law, amendments, effective immediately to sections 3229 and 3231-a, the amendment to section 3231-a being designed to create an exception for juvenile circus performers. Specifically, section 3231-a was amended to permit employment, exhibition and use of a child under 16 as a rope or wire walker, gymnast, rider upon a horse or other animal (except in nonprofessional horse shows) or as an acrobat or upon any cycle or other mechanical vehicle or contrivance provided that a child performer permit is obtained under section 3229 and the child is protected by safety equipment. The amendments to section 3229, in pertinent part, deleted the provision that a permit may not be issued without the consent of the SPCC, which plaintiffs contended was an unconstitutional delegation of authority. Although the sections, as amended, avoid the constitutional infirmities that plaintiffs contend existed, this action and the pending motion for a preliminary injunction are not rendered moot as plaintiffs are still subject to criminal charges as well as charges of abuse and neglect as a result of the performances last spring. Accordingly, the court must address itself to the alleged constitutional infirmities in the former sections in order to dispose of the instant motion for a preliminary injunction. The court will deal first with plaintiffs’ challenge to the constitutionality of section 3231-a. It is plaintiffs’ position that insofar as the statute contains a blanket prohibition against children under 16 performing as acrobats, gymnasts, etc., it constitutes an unconstitutional and improper exercise of the police power, especially in light of the changed conditions of society today. Just as "[precedents drawn from the days of travel by stage coach do not fit the conditions of travel to-day” (McPherson v Buick, 217 NY 382, 391 [Cardozo, J.]), statutes designed to prevent children from being exploited by being forced to become rag pickers, etc., *604 may not fit the conditions of employment of children today. Thus, in State v Miller (23 Conn Supp 121) the court invalidated a Connecticut statute entitled "Unlawful exhibition or employment of child”. Defendant was charged with having conducted a gymnastic exhibition involving children under 16. In its opinion, the court noted (pp 123-124) that:
"Section 53-25 was enacted to prevent offenses against children, to prevent the exploitation of children, and to protect their safety and morals from injurious dangers. However, the language of the statute in its present form is too broad. The statute prohibits for all purposes — a prohibition that is all-inclusive. This all-inclusive prohibition does not appear to the court to have a reasonable relationship to the objects to be accomplished by this legislation. * * *
"Under, this statute, exhibiting juvenile horse riders is invalid, school dance performances are illegal, promoting and encouraging children to dance, ice skate or roller skate for performance purposes would be illegal. Such a result bears no reasonable relationship to the public health, safety, morals, and welfare of children under sixteen years of age, nor of the community at large.” (Emphasis supplied.)
Similarly, in Galyon v Municipal Ct. (229 Cal App 2d 667) a statute prohibiting the exhibition of deformities, as applied to the father of Siamese twins, was invalidated, the court finding that circumstances had so changed since the statute’s enactment, that a complete prohibition of these activities, as opposed to reasonably regulating them, was an unconstitutional and improper exercise of the police power. In view of the changed circumstances, the New York statute, like those of California and Connecticut appears to contain an unconstitutional and improper exercise of the police power.
Plaintiffs have also shown a reasonable likelihood of success on the merits with respect to their contention that section 3229, insofar as it forbade the issuance of a permit if the society refused to give its consent, constitutes an unconstitutional delegation of authority. The society is not an agency of the City of New York and there is no legislative standard for the exercise or review of its power. In essence, the society, a nongovernmental body, is given a veto power over issuance of permits, which veto is not subject to review by any governmental authority. This delegation is similar to that presented in Matter of Fink v Cole (302 NY 216) which involved a statute giving a privately owned corporation the power to *605 refuse or revoke licenses for jockeys, which was held to be an unconstitutional delegation of authority.
Based on the foregoing, the court finds that plaintiffs have shown a reasonable likelihood of success on the merits. As there has also been a showing of irreparable injury, preliminary injunctive relief is warranted. The society concedes that it is not prepared to pay damages, yet if the children did not perform, they would not be paid and the public would be deprived of the opportunity to see these children perform. Moreover, unless plaintiffs restrained the juveniles from performing, plaintiffs are subject to prosecution. It is of note that while most child performers in the circus are children of circus personnel, one of the performers for whom a permit was refused is a child who was taken out of the ghetto and found a life and a family in the circus. Defendant society was organized to prevent cruelty to children. It would be a far crueler thing to deprive this boy of the life in which he has found fulfillment than to permit him to perform.
Accordingly, the motion is granted. The order to be settled hereon shall provide for the posting of a $1,000 bond.
Having disposed of the motion, the court notes that as a result of the amendments, plaintiffs should be able to obtain permits permitting these or other children to perform when the circus again comes to town.